CHAMPLIN et al., Appellees,

v.

KRAFTMAID CABINETRY, INC., et al., Appellants.

[Cite as *Champlin v. Kraftmaid Cabinetry, Inc.*, 190 Ohio App.3d 202, 2010-Ohio-5398.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2009–T–0019.

Decided Nov. 5, 2010.

Thrasher, Dinsmore & Dolan, and John R. Liber II;  and Martin F. White Co., L.P.A., and Martin F. White, for appellees.

McDonald Hopkins, L.L.C., and Michael L. Snyder, for appellants.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellants, Kraftmaid Cabinetry, Inc., its affiliate insurer Masco Corporation, and Joseph D. DeVito Jr., appeal the judgment of the Trumbull County Common Pleas Court, granting appellees Charlene Champlin and Ronald Champlin's motion for prejudgment interest.  For the reasons that follow, we modify the trial court's judgment and affirm the judgment as modified.

{¶ 2} On December 20, 1999, Kraftmaid's employee, appellant Joseph D. DeVito, was driving a company truck when he pulled out in front of appellees and hit their vehicle, causing a tremendous impact.  Appellees were taken by ambulance to Geauga Hospital.  While Ronald sustained injury and sprains in his knees, resulting in medical expenses of $5,000, Charlene's injuries were far more serious.  As a result of those injuries, she was life-flighted to Metro General Hospital in Cleveland.  She sustained a fractured sternum;  fractured ribs;  abdominal trauma and bleeding;  a fractured left hand, which required surgery;  and head trauma.  She also had complaints of dizziness.  Charlene ultimately incurred medical expenses of approximately $30,000.  She returned to her job as a nurses' aide at Briar Hill Nursing Home in Middlefield, Ohio, in May 2000, but

due to problems associated with dizziness, she was unable to work. Due to her complaints of dizziness, Charlene's family physician referred her to an otology specialist, Arnold Schuring, M.D.

{¶ 3} Appellees filed suit on October 31, 2001. In May 2003, the parties agreed to submit the matter to private, binding arbitration. After the hearing, the arbitrators entered an award in favor of appellees in the amount of $725,000, which appellants paid.

{¶ 4} Thereafter, appellees moved the trial court to confirm the arbitration award pursuant to R.C. 2711.09, and on May 6, 2004, the trial court confirmed the award.

{¶ 5} Appellants appealed the court's judgment confirming the arbitration award in *Champlin v. Kraftmaid*, 11th Dist. No. 2004-T-0052, 2005-Ohio-3772, 2005 WL 1714189 (*"Champlin I"*). While that appeal was pending, appellees moved for prejudgment interest in the trial court pursuant to R.C. 1343.03(C). Because *Champlin I* was pending when appellees filed their motion, this court stayed the trial court's proceedings on that motion.

{¶ 6} In *Champlin I*, appellants argued that the trial court did not have jurisdiction to confirm the arbitrators' award because it had already been paid. On July 22, 2005, this court affirmed the trial court's judgment, holding that the court was required to confirm the award. On December 14, 2005, the Supreme Court of Ohio refused to accept appellants' request that the court exercise jurisdiction of an appeal in *Champlin I*.

{¶ 7} After the matter was once again before the trial court on appellees' motion for prejudgment interest, the trial court held a hearing on the motion. Appellees' attorney John Liber testified that soon after he was retained by appellees in 2000, because of Charlene's inability to work, he referred her to Ernie DeChellis, O.D., for a disability evaluation. In his report, dated June 20, 2001, Dr. DeChellis stated that because of her posttraumatic vertigo, Charlene would be unable to perform most activities of daily living without assistance. He stated that Charlene would not be able to perform her job duties as a nurses' aide and that she would not be able to work in any hazardous environment because of posttraumatic vertigo.

{¶ 8} On July 3, 2001, Liber sent a demand letter to Masco's claims adjuster. The letter included Dr. DeChellis's report and all of appellees' medical reports and bills. Liber made settlement demands on Charlene's behalf for $635,000 and on Ronald's behalf for $25,000. After not hearing from appellants for two months, on August 30, 2001, Liber wrote to them asking for a settlement offer. In late September 2001, Masco offered $10,000 for Ronald and $45,000 for Charlene.

{¶ 9} Shortly after appellees rejected appellants' offer in September 2001, Liber suggested mediation, and appellants agreed. Prior to the mediation, Liber retained Dr. John Burke, a well-known economist in Cleveland, to provide a report concerning Charlene's projected lost earnings. Based on Charlene's age, 50, Dr. Burke concluded that her projected lost earnings exceeded $300,000. Liber provided Burke's report to appellants' claims adjuster at that time. The mediation was conducted on or about October 29, 2001. Liber testified that appellants did not take the mediation seriously. Instead of discussing the issues in the case, appellants' counsel spent the entire session discussing irrelevant matters, such as Ronald's retirement and appellees' bankruptcy. Consequently, the mediation did not result in settlement, and appellees filed suit on October 31, 2001.

{¶ 10} Meanwhile, Charlene was still seeing Schuring for her continued complaints of dizziness. On April 8, 2002, he prepared a report concerning her injuries stating that Charlene had been complaining of dizziness since the traffic crash. He said she has permanent dizziness that was caused by trauma to her inner ear during the collision, which is referred to as "traumatic labyrinthitis." Schuring said this was a permanent injury for which there would be no recovery. Upon receipt of this report, Liber sent it to appellants' counsel.

{¶ 11} Liber testified that no one on the defense team had ever heard of traumatic labyrinthitis, and none of appellants' attorneys made a real effort to learn about the condition. Instead, they simply dismissed Charlene's claim that she was unable to work. Prior to suit, appellants had offered appellees $87,500 in settlement. After receiving Schuring's report, appellants did not increase their settlement offer.

{¶ 12} Appellants' counsel took appellees' depositions on April 23, 2002, and reported to their clients that Charlene would come across to the jury as a sympathetic and innocent victim. However, appellants did not increase the amount of their settlement offer.

{¶ 13} Due to the complete lack of movement on this case, on May 29, 2002, Liber sent a letter to appellants' counsel proposing mediation by the Trumbull County Magistrate, but appellants refused. Thereafter, in a further attempt to reach a settlement, by letter dated July 7, 2002, Liber proposed that the case be submitted to binding arbitration with high/low parameters, but appellants refused.

{¶ 14} Then, by his letter of September 11, 2002, which was still six months prior to trial, Liber identified DeChellis, Schuring, and Burke as appellees' experts. In this letter, Liber noted that he had not received a response to appellees' recent settlement demand of $543,000 for Charlene and $17,500 for Ronald and asked for a response. By his letter of September 17, 2002, appel-

lants' counsel Stephen Merriam said he wanted to take the depositions of DeChellis and Schuring. Merriam also stated, "In light of the difference of opinion over the value of your clients' cases, KraftMaid is not presently in a position to make any response to your latest settlement demands in the amount of $543,000 and $17,500 for Charlene and Ronald Champlin, respectively."

{¶ 15} Appellants took the discovery depositions of DeChellis and Schuring in December 2002. Merriam reported to his clients that both doctors would make excellent expert witnesses for appellees.

{¶ 16} On December 10, 2002, Liber wrote a letter to Merriam stating: "With the depositions of Drs. Schuring and DeChellis complete, we have confirmed that Charlene Champlin's injuries from the collision * * * are permanent, and disabling. There is no further legitimate basis for denying my clients the fair compensation which they deserve. * * * I would like to know if KraftMaid/MASCO is willing to make a fair and reasonable effort at resolving this matter so that we can at least end the Champlins' financial suffering." In response, Merriam told Liber that he had settlement authority in the amount of only $160,000. As a result, this attempt to settle by Liber likewise proved futile.

{¶ 17} Although Schuring had stated in his April 8, 2002 report that Charlene's condition was permanent, Merriam testified that appellants still had a problem accepting that Charlene would not be able to return to work. As a result, Liber asked Schuring for a supplemental report addressing this specific question. On April 8, 2003, Schuring prepared a report in which he stated that Charlene was no longer employable. Liber provided this report to Merriam at that time.

{¶ 18} The final pretrial took place on April 24, 2003. Liability was not disputed. In Masco's claim abstract, its adjuster described appellees' medical experts, who had testified in deposition that Charlene's injuries were permanent, as "excellent" and "superb." There was no dispute about the appropriateness of Charlene's care or the reasonableness of her medical expenses. Appellants did not dispute that Charlene had sustained lost wages or the projected amount of that loss as determined by Burke. At the final pretrial, appellees reduced their settlement demand to $450,000. Although appellees later learned that appellants had given their defense team settlement authority of $300,000, the highest offer made by defense counsel at this final pretrial was $250,000, which, they said, would be available for only one day. The amount offered did not even cover the amount of Charlene's economic damages, let alone any of the medical expenses and physical injuries sustained by appellees.

{¶ 19} The trial was scheduled for May 2003 but then was rescheduled for June 2003. Although Liber's efforts to settle this case for almost four years had yielded no results, he again proposed binding arbitration. The parties agreed to a high/low provision with parameters of $150,000 and $750,000. The parties'

agreement was memorialized in a letter from Liber to appellants' counsel, dated May 28, 2003. As noted above, the arbitrators awarded appellees $725,000.

{¶ 20} On February 6, 2009, the trial court granted appellees' motion for prejudgment interest. The court found that although defense counsel had no experience with traumatic labyrinthitis, they made no earnest effort to research or understand the condition. Further, defense counsel dismissed Charlene's claim that her injuries prevented her from working, although they were provided with DeChellis's report early in the litigation indicating that she could not return to work in her chosen profession or engage in any other employment involving hazardous activities due to her inner-ear injury. The court found that appellants had failed to undertake any steps to investigate Charlene's employability other than to reject her claim. The court also found that despite Merriam's testimony that the only impediment to settlement was Charlene's claim that she could not work, during the discovery deposition of Schuring, Charlene's treating otolaryngologist and expert on traumatic labyrinthitis, defense counsel never asked him any questions concerning whether Charlene was employable.

{¶ 21} The court found that in Schuring's supplemental report, dated April 8, 2003, he stated that Charlene was permanently disabled and no longer employable due to traumatic labyrinthitis. The court also found that by that date, appellants knew that appellees would present evidence of $30,000 in undisputed medical expenses and more than $300,000 in lost earnings. Yet in response to appellees' settlement demand of $450,000 at the final pretrial on April 24, 2003, the highest offer appellants made was $250,000, although appellants' counsel had settlement authority up to $300,000. Appellants' $250,000 settlement offer was never increased between the final pretrial on April 24, 2003, and the date of the arbitration award on July 24, 2003, and the award was nearly three times higher than appellants' last offer.

{¶ 22} The court found that when discovery was completed and the medical evidence was perpetuated prior to trial, appellants did not rationally evaluate their risks. The court also found that while appellees made a good-faith effort to settle, appellants did not.

{¶ 23} The court awarded prejudgment interest to appellees in the amount of $317,543.30. Appellants appeal the trial court's award of prejudgment interest, asserting two assignments of error. In their first assigned error, they allege:

{¶ 24} "The trial court erred when it awarded any pre-judgment interest to Appellees."

{¶ 25} First, appellants argue that once the parties submitted the case to binding arbitration, any award of prejudgment interest was exclusively within the

arbitration panel's jurisdiction and the panel's award precluded appellees from seeking prejudgment interest from the trial court. We do not agree.

{¶ 26} In support of this argument, appellants rely on *Miller v. Gunckle,* 96 Ohio St.3d 359, 2002-Ohio-4932, 775 N.E.2d 475, in which the Supreme Court of Ohio held that an arbitration panel has the authority to award prejudgment interest on a tort claim under R.C. 1343.03(C), even when the arbitration agreement is silent on the issue. Id. at 363–364. However, the Eighth Appellate District held in *N. Olmsted v. Internatl. Assn. of Firefighters, Local 1267,* 8th Dist. Nos. 91300, 91301, and 91724, 2009-Ohio-960, 2009 WL 547452, that the Supreme Court of Ohio in *Miller* did not hold that an arbitration agreement divests the trial court of jurisdiction to rule on a motion for prejudgment interest. *N. Olmsted* at ¶ 49–50. The Eighth District held:

{¶ 27} "*Miller* does not address the issue of whether a trial court may award prejudgment interest on an arbitration award. As recognized in *Handel's Ents. v. Wood,* [7th Dist.] No. 05 MA 70, 2005-Ohio-6922[, 2005 WL 3536475]:

{¶ 28} " '*Miller* * * * [does] not stand for the proposition that a common pleas court errs when it grants prejudgment interest even though the request was not first made to the arbitration panel. R.C. 1343.03(A) states that prejudgment interest can be granted upon "all judgments, decrees, and orders of any judicial tribunal." The court of common pleas is a judicial tribunal and its order confirming the arbitration award is a judgment. Thus, it does have the authority to award prejudgment interest. Therefore, we find no error with the common pleas court's grant of prejudgment interest despite the fact that it was not first raised to the arbitration panel.' " (Emphasis omitted.)

{¶ 29} We note that in *Handel's,* the Seventh District held: "Accordingly, if an arbitration clause or contract clearly does not prevent an arbitration panel from deciding the issue of prejudgment interest, and in the absence of a court rule to the contrary, the prevailing party can submit that issue *to the panel or a common pleas court.*" (Emphasis added.) 2005-Ohio-6922, 2005 WL 3536475, at ¶ 85. Thus, despite the existence of an arbitration agreement, a motion for prejudgment interest can be submitted to either the arbitration panel or to the trial court.

{¶ 30} This court in *Advanced Technology Incubator, Inc. v. Manning,* 11th Dist. No. 2001–P–0154, 2003-Ohio-2537, 2003 WL 21138428, addressed the issue whether the trial court retains jurisdiction to consider a motion for prejudgment interest after it confirms an arbitration award. In *Manning,* after the trial court confirmed the arbitrators' award, the plaintiff moved for prejudgment interest, which the trial court denied. This court reversed, holding that the plaintiff was entitled to prejudgment interest, and *remanded the case to the trial court, not the*

*arbitration panel,* to determine the accrual date of prejudgment interest and to calculate the amount of prejudgment interest due. Id. at ¶ 27. In so doing, this court impliedly held that the trial court retained jurisdiction to rule on the issue of prejudgment interest.

{¶ 31} Further, in *Carden v. Miami Hardware & Appliance Co., Inc.* (1996), 113 Ohio App.3d 220, 680 N.E.2d 717, discretionary appeal not allowed at (1996), 77 Ohio St.3d 1448, 671 N.E.2d 1286, the plaintiffs had filed a negligence action. The case was submitted to arbitration, and the panel found in favor of the plaintiffs. Thereafter, the plaintiffs filed motions to confirm the award and for prejudgment interest. The trial court denied the motions, but the Second District reversed, holding:

{¶ 32} "[P]ersons who submit tort claims to arbitration would not usually expect arbitrators to determine prejudgment interest issues.

{¶ 33} "We disagree with the trial court that the arbitration agreement encompassed prejudgment interest claims. The rule for prejudgment interest should be the same without regard to whether the trier of fact is a jury or an arbitration panel * * *.

{¶ 34} " * * *

{¶ 35} "We agree with the plaintiffs that the trial court should have set a prejudgment interest hearing." Id. at 223, 680 N.E.2d 717.

{¶ 36} Based on the foregoing, we hold that despite the existence of the arbitration agreement, the trial court retained jurisdiction to rule on appellees' motion for prejudgment interest.

■ {¶ 37} Next, appellants argue that the trial court abused its discretion in finding that appellees made a good-faith effort to settle the case, but that appellants did not. The decision whether a party has made a good-faith effort to settle is within the sound discretion of the trial court. *Pruszynski v. Reeves,* 11th Dist. No. 2005–G–2612, 2006-Ohio-5190, 2006 WL 2798257, at ¶ 14, reversed on other grounds at 117 Ohio St.3d 92, 2008-Ohio-510, 881 N.E.2d 1230, citing *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 482 N.E.2d 1248. As a result, an appellate court will not overturn a finding by the trial court on this issue unless the court's actions demonstrate an abuse of discretion. *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 20, 615 N.E.2d 1022. The term "abuse of discretion" is a term of art, connoting a court's judgment that does not comport with reason or the record. *Gaul v. Gaul,* 11th Dist. No. 2009–A–0011, 2010-Ohio-2156, 2010 WL 1948314, at ¶ 24, citing *State v. Ferranto* (1925), 112 Ohio St. 667, 676–678, 148 N.E. 362. The Second Appellate District recently adopted this definition of the abuse-of-discretion standard in *State v. Beechler,* 2d Dist. No. 09–CA–54, 2010-Ohio-1900, 2010 WL 1731784, at

¶ 65, citing Black's Law Dictionary (4th Ed.Rev.1968) 25 ("A discretion exercised to an end or purpose not justified by and clearly against reason and evidence").

█ {¶ 38} "Ohio courts have recognized the common-law right to prejudgment interest." *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 656, 635 N.E.2d 331. It is well established that the reasons for prejudgment-interest awards is to encourage prompt settlement of claims, prevent prolonged litigation, and compensate and make the injured party whole. *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 116–117, 652 N.E.2d 687. Moreover, the Supreme Court of Ohio has held that " 'interest is allowed, not only on account of the loss which a [judgment] creditor may be supposed to have sustained by being deprived of the use of his money, but on account of the gain made from its use by the [judgment] debtor.' " *Moskovitz* at 656, quoting *Hogg v. Zanesville Canal & Mfg. Co.* (1832), 5 Ohio 410, 424.

{¶ 39} In order to award prejudgment interest, the trial court must find that the party required to pay the judgment failed to make a good-faith effort to settle and that the party to whom the judgment is to be paid did not fail to make a good-faith effort to settle the case. R.C. 1343.03(C); *Moskovitz* at 658.

{¶ 40} In *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, the Supreme Court of Ohio held that a party has made a good-faith effort to settle under R.C. 1343.03(C) if he has (1) fully cooperated in the discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, *and* (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. Id. at 159. A party has made a good-faith effort to settle if he has complied with each of these four factors. *Szitas v. Hill,* 165 Ohio App.3d 439, 2006-Ohio-687, 846 N.E.2d 919, ¶ 11 citing *Detelich v. Gecik* (1993), 90 Ohio App.3d 793, 797, 630 N.E.2d 771.

█ {¶ 41} For purposes of prejudgment interest, a lack of good faith is not the equivalent of bad faith, which requires a dishonest purpose or ill will in the nature of fraud. *Kalain* at 159, 25 OBR 201, 495 N.E.2d 572, fn. 1. To determine whether a party has failed to make a good-faith effort to settle under R.C. 1343.03(C), it is necessary only to apply *Kalain's* four-pronged test. *Detelich* at 797, 630 N.E.2d 771.

█ {¶ 42} "The effect of *Kalain* is to place the burden of proof on a party seeking prejudgment interest. * * * Accordingly, it is incumbent on a party seeking an award to present evidence of [an] * * * offer to settle that was reasonable considering such factors as the type of case, the injuries involved, applicable law, defenses available, and the nature, scope and frequency of efforts to settle. Other factors would include responses—or lack thereof—and a demand

substantiated by facts and figures." *Moskovitz*, 69 Ohio St.3d at 659, 635 N.E.2d 331. Any determination regarding a party's good-faith effort to settle requires a review of the settlement efforts made by a party's insurance carrier. Id. at 660.

{¶ 43} This court has held that when liability is clear, as it is in the instant case, "the policy of R.C. 1343.03(C) requires an insurer to make a determined effort to settle a claim prior to trial." *Pruszynski*, 2006-Ohio-5190, 2006 WL 2798257, at ¶ 39.

{¶ 44} With respect to appellees' good-faith efforts to settle, the trial court found that "from the very earliest stages of this litigation, appellants had a report from Dr. DeChellis indicating that Charlene would not be able to return to her former employment or engage in any other employment involving hazardous activities because of posttraumatic vertigo.

{¶ 45} We note that on or about April 8, 2002, and thus more than one year prior to the final pretrial, Liber sent to appellants' counsel Schuring's report, in which he stated that Charlene has dizziness caused by trauma to her inner ear and that this was a permanent injury for which there would be no recovery. Thus, long before appellants received Schuring's April 8, 2003 supplemental report, they were in possession of the expert's reports stating that Charlene could no longer work in her chosen profession and that her condition was permanent. We also note that prior to submission of the case to arbitration, Liber approached appellants on at least six occasions in attempts to settle the case.

{¶ 46} In contrast, the trial court outlined in its judgment the evidence demonstrating appellants' lack of good faith. The court found that although the defense team had no experience with Charlene's injury and was in possession of DeChellis's report from the beginning of this litigation, appellants' counsel made no real effort to research or understand Charlene's condition. Further, at the final pretrial, appellants were aware that Schuring had stated that Charlene was permanently disabled and no longer employable, that appellees had $30,000 in undisputed medical expenses, and that they would present evidence of $300,000 in lost earnings. However, in response to appellees' settlement demand of $450,000 presented at that time, the highest amount offered by appellants was $250,000, although defense counsel had settlement authority up to $300,000.

{¶ 47} Appellants argue that appellees delayed in presenting evidence of Charlene's inability to work until she submitted Schuring's April 8, 2003 supplemental report. However, long before submitting that report, appellees had presented DeChellis's report and Schuring's original report, both of which indicated that Charlene could not return to work. Appellants are in no position to complain about any lack of clarity in the doctors' reports since, as the trial

court found, defense counsel made no real effort to research or understand Charlene's condition. In any event, appellants concede that Schuring's supplemental report, which was provided to appellants several weeks before the final pretrial, provided evidence that Charlene was unemployable. Despite appellants' receipt of this report on or about April 8, 2003, they never increased the amount of their $250,000 settlement offer. It is also worth noting that while Liber made multiple attempts to settle this case, appellants' counsel never approached Liber in efforts to settle the case.

{¶ 48} The trial court based its award of prejudgment interest on the evidence that demonstrated that appellants failed to rationally evaluate the risks of litigation and to make a good-faith effort to settle appellees' claims during nearly two years of litigation of this clear-liability case.

{¶ 49} Based on our review of the record, this case dragged on for an extended period of time with no "determined effort" by appellants to settle. *Pruszynski*, 2006-Ohio-5190, 2006 WL 2798257. In fact, the persistent efforts of appellees to settle were met with resistance, posturing, and strong-arm tactics by appellants. In the unique circumstances of this case, we hold that the trial court did not abuse its discretion in awarding prejudgment interest to appellees. However, as discussed under appellants' second assignment of error, the amount of interest awarded by the trial court must be limited to the agreed ceiling of the parties' high/low agreement.

{¶ 50} Appellants' first assignment of error is overruled.

{¶ 51} For their second assigned error, appellants maintain:

{¶ 52} "The trial court erred when it awarded pre-judgment interest to Appellees in excess of $25,000."

{¶ 53} Appellants argue that in light of the parties' high/low agreement, the trial court did not have authority to award prejudgment interest in addition to the arbitrators' award or, if it did, its authority was limited to $25,000, the difference between the arbitration award and the agreed ceiling in the high/low agreement. Thus, the issue presented involves the construction of that agreement.

{¶ 54} " '[T]he construction of a written contract is a question of law, which [is reviewed] de novo.' " *Gates v. Ohio Sav. Assn.*, 11th Dist. No. 2009–G–2881, 2009-Ohio-6230, 2009 WL 4160508, at ¶ 18, quoting *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 28.

{¶ 55} In order to ascertain the intent of the parties to a contract, the court must first look to the language in the contract. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898. It is a

fundamental principle in contract construction that contracts should "be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, at paragraph one of the syllabus. Where the terms are clear and unambiguous, a court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties. *In re All Kelley & Ferraro,* ¶ 29.

{¶ 56} The parties' high/low arbitration agreement provides:

{¶ 57} "This will confirm that the parties have agreed to submit this case to binding arbitration, with an agreed "high/low" of $750,000 and $150,000. * * * There will be no appeal of the arbitrator's decision. The decision of at least two out of three arbitrators will serve as a final judgment * * *. The amount of the decision will be binding upon the parties if it falls within the range identified above. If the award is greater than the 'high' figure, then it is replaced by $750,000.00. Likewise, if the judgment is less than the low, it is replaced by the $150,000.00."

{¶ 58} As a preliminary matter, we note there are no Ohio cases addressing whether a high/low agreement precludes an award of prejudgment interest. In support of their argument, appellants urge us to rely on the cases discussed below in which appellate courts in other states have addressed the issue. In general, these cases hold that such an agreement does not preclude an award of prejudgment interest, but rather limits the plaintiff's recovery of such interest to the agreed ceiling of the high/low agreement.

{¶ 59} First, appellants cite *Benz v. Pires* (A.D.1994), 269 N.J.Super. 574, 636 A.2d 101, in which the New Jersey Superior Court Appellate Division stated:

{¶ 60} "A high-low agreement is a device used in negligence cases in which a defendant agrees to pay plaintiff a minimum recovery in return for plaintiff's agreement to accept a maximum sum regardless of the outcome of the trial. Any outcome between the agreed limits is to be accepted by the parties. A high-low agreement protects a plaintiff from the danger of receiving less than the floor amount and protects a defendant from exposure to a judgment higher than the agreed ceiling.

{¶ 61} "Unless the parties expressly say otherwise, calculation of prejudgment interest beyond the chosen limits is not part of a high-low agreement. The parties agree to let the usual process of trial and judgment operate and control the outcome, * * * but they also agree that the result must be somewhere within the predetermined limits. * * *. Thus, the limits are not subject to a rule for prejudgment interest * * *.

{¶ 62} "A high-low agreement governs a number of possible trial outcomes:

{¶ 63} "If there is a no-cause verdict, the agreed floor controls, and plaintiff takes that amount. There is nothing to calculate interest on. There is only the agreed minimum recovery.

{¶ 64} "If there is a damage verdict below the agreed floor, interest is calculated on the verdict and plaintiff receives the total, up to the agreed ceiling; if the total does not exceed the floor, plaintiff receives the floor.

{¶ 65} "If there is a damage verdict of the floor or more, but less than the agreed ceiling, interest is calculated on the verdict. Plaintiff receives the full amount up to the ceiling.

{¶ 66} "If there is a damage verdict of the ceiling or more, plaintiff receives the amount of the ceiling.

{¶ 67} "There is nothing to prevent the parties from making a different high-low agreement. They can agree, for instance, that prejudgment interest should be applied to the stipulated limits. If the parties so agree, then interest will be applied according to the terms of the agreement * * *." (Footnotes and citations omitted.) Id. at 578–580, 636 A.2d 101.

{¶ 68} Second, appellants cite *Becnel v. Stein* (La.App.1999), 726 So.2d 468, in which the Court of Appeals of Louisiana, Fifth Circuit, limited the plaintiff's recovery, including the interest awarded, to the agreed ceiling of the parties' high/low agreement. Id. at 470.

{¶ 69} Third, appellants cite *Thompson v. Whipple Constr. Co.*, 2009 PA Super 57, 985 A.2d 221, in which the Superior Court of Pennsylvania adopted the analysis of the New Jersey Superior Court in *Benz*, holding that the "addition of prejudgment interest is appropriate only when the jury verdict is an amount between the high and low designations." Id. at ¶ 33. In arriving at its holding, the court stated:

{¶ 70} "As a tool commonly utilized in litigation, a high/low agreement guarantees a plaintiff a minimal recovery while concomitantly circumscribing a defendant's potential exposure. Court, counsel, and litigants favor them; they assure plaintiffs of minimally-acceptable recoveries while protecting defendants against exorbitant verdicts. Parties entering into high/low agreements are free to craft their terms in any manner that is mutually acceptable. To engraft the addition of [prejudgment interest] onto the ceiling of a high/low agreement that is silent to their applicability renders a high/low agreement useless for litigation purposes. The ceiling in such an agreement would be a nullity.

{¶ 71} " * * * The parties herein were free to agree that [prejudgment interest] should be applied to the stipulated limits, but they did not do so. Allowing Appellant to recover such amounts would defeat the plain meaning of

the Agreement by exposing Appellee to liability beyond the amount to which it agreed." Id. at ¶ 36–37.

{¶ 72} Appellants argue that the parties' "high/low agreement capped the total amount that Appellees could receive in the case, including pre-judgment interest * * * at $750,000.00." We agree. As noted above, the parties agreed that the award would be somewhere between $150,000 and $750,000. The arbitrators made an award that was $25,000 less than the agreed ceiling. Therefore, applying the rulings in *Benz, Becnel,* and *Thompson* to the parties' agreement, we hold the trial court's award of prejudgment interest must be limited to $25,000.

{¶ 73} Since any award of prejudgment interest would be added to the arbitrators' award, if we were to affirm the entire amount of prejudgment interest, the award would exceed the agreed ceiling of the high/low agreement and defeat the clear and unambiguous terms of the agreement by exposing appellants to liability beyond the amount to which they agreed. The parties were free to agree that appellees had the right to pursue prejudgment interest beyond the agreed ceiling of the high/low agreement, but they chose not to do so. This court must construe the high/low agreement as written and may not modify its clear and unambiguous terms by including provisions that the parties never intended under the guise of contract interpretation.

{¶ 74} Since we hold that the trial court did not abuse its discretion in awarding prejudgment interest, we affirm that award, but consistent with our holding, we modify it by reducing it to $25,000 to conform to the terms of the parties' high/low agreement.

{¶ 75} For the reasons stated in the opinion of this court, the assignments of error are overruled. The judgment of the Trumbull County Court of Common Pleas is modified and affirmed as modified.

Judgment modified
and affirmed as modified.

CANNON and O'TOOLE, JJ., concur.

COLLEEN MARY O'TOOLE, Judge, concurring.

{¶ 76} I concur with the majority but write separately with respect to the following:

{¶ 77} This court stated in *Davidson v. Bucklew* (1992), 90 Ohio App.3d 328, 331–334, 629 N.E.2d 456:

{¶ 78} "[T]here is a very strong public policy argument favoring arbitration. Public policy favors and encourages arbitration, and 'every reasonable intend-

ment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts.' *Brennan v. Brennan* (1955), 164 Ohio St. 29, 57 O.O. 71, 128 N.E.2d 89, paragraph one of syllabus; *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186, *Reynoldsburg City School Dist. Bd. of Edn. v. Reynoldsburg School Support Assn.* (June 4, 1991), Franklin App. No. 90AP–1233, unreported, at 6, 1991 WL 101599.

{¶ 79} " * * *

{¶ 80} "R.C. 1343.03(C) provides for prejudgment interest. However, that statute only applies to interest on a *judgment*, and not to money rendered pursuant to a settlement. *Roen v. State Farm Mut. Ins. Co.* (Feb. 10, 1989), Portage App. No. 1988, unreported, at 8–9, 1989 WL 11266. In other words, an arbitration award which has not been confirmed is not a *judgment* from which prejudgment interest may arise.

{¶ 81} " * * *

{¶ 82} "[Thus,] the trial court (but not the arbitration panel itself) does have the discretionary power pursuant to R.C. 1343.03(C) to order prejudgment interest on a confirmed arbitration award." (Emphasis sic.)

{¶ 83} In addition, the Supreme Court of Ohio in *Pruszynski v. Reeves,* 117 Ohio St.3d 92, 2008-Ohio-510, 881 N.E.2d 1230, paragraph one of the syllabus, stated: "Prior to ruling on the merits of a motion for prejudgment interest pursuant to R.C. 1343.03(C), a trial court must set a date certain for an evidentiary hearing."

{¶ 84} This writer believes that the trial court, not the arbitration panel, has to make an assessment with respect to prejudgment interest after there is a final judgment.

{¶ 85} I concur.