[Cite as *Gustavus, L.L.C. v. Eagle Invests.*, 2012-Ohio-1433.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

GUSTAVUS, LLC                          :

    Plaintiff-Appellant            :     C.A. CASE NO. 24899

vs.                                    :     T.C. CASE NO. 11CV03993

EAGLE INVESTMENTS, et al.              :     (Civil Appeal from
                                              Common Pleas Court)
    Defendants-Appellees           :

. . . . . . . . .

O P I N I O N

Rendered on the 30th day of March, 2012.

. . . . . . . . .

Joseph C. Lucas, Atty. Reg. No. 0081336; Tyler W. Kahler, Atty. Reg. No. 0085932, 7015 Corporate Way, Centerville, OH 45459
    Attorneys for Plaintiff-Appellant

J. Steven Justice, Atty. Reg. No. 0063719; Paul H. Shaneyfelt, Atty. Reg. No. 0065629, 210 W. Main Street, Troy, OH 45373

Ray C. Freudiger, 1 S. Main Street, Suite 1800, Dayton, OH 45402

Thomas W. Kendo, Jr., 7925 Paragon Road, Dayton, OH 45459
    Attorneys for Defendants-Appellees

. . . . . . . . .

GRADY, P.J.:

{¶ 1}  Plaintiff, Gustavus, LLC ("Gustavus"), appeals from a final order entered by the common pleas court pursuant to R.C. 2711.02(B), staying the trial of an action Gustavus commenced against Defendants, Eagle Investments, LLC and several individuals associated

with it (hereinafter "Eagle"), pending arbitration of the issues in the action. Gustavus argues that the trial court erred because the relief it seeks against Eagle under the Ohio Corrupt Activities Act, R.C. 2923.31, et seq., creates a public policy defense against arbitration, and that the trial court abused its discretion in ordering a stay because the terms for arbitration in the arbitration clause of the contract between Gustavus and Eagle are vague and inconsistent.

{¶ 2} We reject those arguments on findings that the arbitration to which the parties agreed does not preclude the relief under the Ohio Corrupt Activities Act that Gustavus seeks, and that the terms of the arbitration clause which Gustavus claims are vague and inconsistent are merely anomalies that do not prevent arbitration of the action and the stay the trial court ordered. We therefore affirm the judgment from which the appeal was taken.

I

STATEMENT OF FACTS

{¶ 3} Gustavus and Eagle are business enterprises that own and operate commercial real properties. In June of 2010, Gustavus agreed to purchase from Eagle the premises consisting of multiple residential rental units located at 1901 Village Drive in Dayton, Ohio. The agreed price was one million, one hundred and twenty thousand dollars. The written Real Estate Purchase and Sale Agreement contains the following arbitration clause at Section (30)(b):

(1) ANY DISPUTE OR CLAIM BETWEEN BUYER AND SELLER ARISING FROM THIS AGREEMENT OR THE TRANSACTION CONTEMPLATED HEREIN SHALL BE SETTLED BY BINDING ARBITRATION UNDER THE COMMERCIAL ARBITRATION RULE OF

THE AMERICAN ARBITRATION ASSOCIATION. JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION, FILING A COURT ACTION TO OBTAIN PROVISIONAL REMEDIES SHALL NOT CONSTITUTE A WAIVER OF THIS PROVISION.

(2) THE ARBITRATOR(S) SHALL BE A RETIRED JUDGE OR ANY ATTORNEY WITH AT LEAST TEN (10) YEARS OF COMMERCIAL REAL ESTATE LAW EXPERIENCE. THE ARBITRATION SHALL BE DECIDED IN ACCORDANCE WITH SUBSTANTIVE OHIO LAW. THE PARTIES SHALL HAVE THE RIGHT TO CONDUCT DISCOVERY IN ACCORDANCE WITH OHIO CODE OF CIVIL PROCEDURE SECTION 1283.05 AND TO THE SAME EXTENT AS IN A CIVIL ACTION. THE ARBITRATION SHALL OTHERWISE BE CONDUCTED IN ACCORDANCE WITH TITLE 9 PART III, OHIO CODE OF CIVIL PROCEDURE. THIS AGREEMENT TO ARBITRATE SHALL BE INTERPRETED IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT.

**{¶ 4}** Additionally, the arbitration clause of the Contract provides in section (30)(b)(4) that:

NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTE" PROVISION

DECIDED BY A NEUTRAL ARBITRATION AS PROVIDED BY OHIO LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN COURT OR JURY TRIAL, AND ARE GIVING UP MOST OF YOUR RIGHTS OF APPEAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION NOTWITHSTANDING THIS WAIVER OF RIGHTS TO DISCOVERY, IN ANY CASE IN WHICH BROKER SUES FOR AN UNPAID COMMISSION, BROKER SHALL BE ENTITLED TO THE PRODUCTION OF ALL NONPRIVILEGED DOCUMENTS DEMANDED OR SUBPOENAED BY BROKER FROM BUYER AND SELLER, OR ANY THIRD PARTY TO THE ARBITRATION.

**{¶ 5}** The purchase and sale of the real property closed on October 27, 2010. Gustavus took possession of the property and has operated it since.

II

PROCEDURAL HISTORY

**{¶ 6}** On June 3, 2011, Gustavus commenced an action against Eagle, three of its partners, the real estate broker that represented Eagle in the purchase and sale and the broker's agent, and the individual owners and operators of a property management firm that had managed the property for Eagle.

**{¶ 7}** As operative facts, Gustavus alleged that Eagle and the individual defendants

misrepresented the rental income the property generated as well as the costs of its operation. Defendants allegedly did so by providing false rent rolls and other verifications of those matters to Gustavus to induce it to purchase the property. Gustavus's complaint pled claims alleging (1) breach of contract, (2) fraudulent misrepresentation, (3) violations of the Ohio Corrupt Activities Act, R.C. 2923.31, et seq., (4) civil conspiracy, (5) unjust enrichment, and (6) conversion. As relief, Gustavus sought rescission of the contract of sale and an order requiring Eagle to repurchase the property, money damages, and other relief made available by the Ohio Corrupt Activities Act, as well as punitive damages and attorney fees.

{¶ 8} Eagle filed responsive pleadings and a motion to stay the action pending arbitration pursuant to R.C. 2711.021(B). Gustavus opposed the motion, arguing, among other things, that the public policy underlying the Ohio Corrupt Activities Act precludes arbitration of its claims for relief under the Act, and that the arbitration clause in the contract of sale is vague and inconsistent. The trial court rejected those arguments and stayed the action, finding that the arbitration agreement is not sufficiently indefinite or inconsistent to void that agreement, and that Eagle's public policy defense to arbitration is preempted by Section 2 of the Federal Arbitration Act.

{¶ 9} Gustavus filed a notice of appeal from the order staying its action pending arbitration. The matter is now before us for review on the following assignment of error by Gustavus:

{¶ 10} "THE TRIAL COURT ERRED IN GRANTING DEFENDANTS EAGLE INVESTMENT, WILLIAM HEIDENREICH, ROBERT HEIDENREICH, AND JOSEPH BALOGH'S MOTION TO COMPEL ARBITRATION WHERE (1) THE ARBITRATION

CLAUSE OF THE CONTRACT IS UNENFORCEABLE BECAUSE IT VIOLATES PUBLIC POLICY BY HINDERING THE PURPOSE OF THE OHIO CORRUPT ACTIVITY ACT, AND (2) THE ARBITRATION CLAUSE OF THE CONTRACT IS UNENFORCEABLE BECAUSE IT SETS OUT THE RULES FOR ARBITRATION IN VAGUE TERMS THAT ARE INCONSISTENT WITH OHIO LAW.

III

LEGAL ANALYSIS

{¶ 11} An order entered pursuant to R.C. 2711.02(B) is a final, appealable order. R.C. 2711.02(C). We therefore have jurisdiction to review the error assigned, and to affirm, reverse, or modify the final judgment from which the appeal was taken.

{¶ 12} When addressing whether a trial court properly granted a motion to stay proceedings and compel arbitration on a finding that the issues are referable to arbitration, our standard of review is the abuse of discretion standard. *Carter Steel & Fabricating Company v. Danis Building Construction Company*, 126 Ohio App.3d 35, 710 N.E.2d 299 (3d Dist. 1998). However, when an appellate court is presented with purely legal questions, the standard of review to be applied is de novo. *Eagle v. Fred Martin Motor Company*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161 (9th Dist.), ¶ 11

A.

GUSTAVUS'S PUBLIC POLICY DEFENSE

{¶ 13} Gustavus argues that the public policies underlying its claim for relief alleging violations of the Ohio Corrupt Activities Act ("OCAA") preclude arbitration of that claim. The argument presents a purely legal question, and we review the error assigned de novo.

{¶ 14} Arbitration clauses in a contract are of two types: (1) unlimited clauses providing for arbitration of all disputes that may arise out of the parties' contractual relationship, and (2) limited clauses providing for arbitration of only specific contractual disputes or specific issues. The arbitration agreement in the present case provides that "any dispute between buyer and seller arising from this agreement or by the transaction contemplated herein shall be settled by binding arbitration under the commercial arbitration rules of the American Arbitration Association." The agreement is therefore plenary in nature and applies to any and all disputes having the required origin.

{¶ 15} R.C. 2711.01(A) provides that an arbitration agreement in a written contract "shall be valid, irrevocable, and enforceable, except upon grounds that exist in law or equity for the revocation of any contract." R.C. 2711.01(B)(1) creates an exception to the requirements of R.C. 2711.01 to 2711.16 with respect "to controversies involving the title to or possession of real estate," subject to certain further applications that do not apply in the present case.

{¶ 16} None of the particular "controversies," in this action, that is, the matters of disagreement or in dispute between the parties, involve the title to the real property concerned in the dispute or the right to possession of that property. It is undisputed that title to the property is in Gustavus and that Eagle has no possessory interest in the property. However, where final determination of claims in an action may entitle a claimant to relief that affects title, such as specific performance of a contract of sale, it has been held that the R.C. 2711.01(B)(1) bar against arbitration applies. *Kedzior v. CDC Dev. Corp.*, 123 Ohio App.3d 301, 704 N.E.2d 54 (8th Dist. 1997). The relief of rescission and repurchase of its property

that Eagle requests would, if granted, likewise affect title to the property concerned. On that basis, R.C. 2711.01(B)(1) would bar enforcement of the parties' agreement to arbitrate.

{¶ 17} The Federal Arbitration Act ("FAA"), 9 USC Sections 1-16, governs disputes that are resolved through arbitration rather than in the courts. Section 2 of the FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

{¶ 18} In *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Supreme Court held that because a state statute declaring void any provision purporting to bind a franchisee to waive compliance with provisions of the statute rendered unenforceable an arbitration agreement involving commerce, the statute conflicted with Section 2 of the FAA and thus violates the Supremacy Clause of the United States Constitution, Article 2, clause 6. The court pointed out that in enacting Section 2 of the FAA Congress declared a national policy favoring arbitration and withdrew the power of the states to instead require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. The court further pointed out that there are only two limitations on the enforceability of arbitration provisions governed by the FAA: (1) they must be part of a written maritime contract or a contract evidencing a transaction involving commerce, and (2)

such clauses may be revoked upon grounds as exist at law or in equity for the revocation of any contract, and there is nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law.

{¶ 19} In *AT&T Mobility, LLC v. Concepcion,* ___ U.S. ___, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), California common law prohibited waivers of arbitration rights by consumers in contracts of adhesion, reasoning that such waivers are unconscionable. The Supreme Court held that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." 131 S.Ct. at 1747. The Supreme Court explained: "Although Section 2's savings clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 1748.

{¶ 20} The written contract of sale between Gustavus and Eagle evidences a transaction involving commerce. The arbitration agreement in the contract is subject to revocation upon grounds as exist in law or equity for the revocation of any contract. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening Section 2. Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." (Citations omitted.) *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 134 L.Ed.2d 902, 116 S.Ct. 1652 (1996).

{¶ 21} The exception established in R.C. 2711.01(B)(1) concerning controversies involving the title to or possession of real estate is applicable only to arbitration. Therefore,

R.C. 2711.01(B)(1) is not a defense to the R.C. 2711.02(B) motion for arbitration that Eagle filed. *Doctor's Associates, Inc.* Gustavus concedes that point, but argues that arbitration of its OCAA claims is subject to a public policy exception.

{¶ 22} R.C. 2923.32 prohibits engaging in a pattern of corrupt activity. In order to allege a criminal violation of that section, a complaint must plead (1) that the conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity, and (3) that the defendant has participated in the affairs of an enterprise or has acquired or maintained an interest in or control of an enterprise through which the defendant engaged in the criminal conduct. *Kondrat v. Morris,* 118 Ohio App.3d 198, 692 N.E.2d 246 (8th Dist. 1997).

{¶ 23} R.C. 2923.34 confers a right to maintain a civil action on persons injured by violations of R.C. 2923.31. The relief made available by R.C. 2923.34 includes treble damages, divestiture of the offender's interests in the enterprise or in any real property, reasonable restrictions on future activities or investments, and attorney fees. R.C. 2923.34(B)(1), (2), (E) and (F).

{¶ 24} The Third Claim For Relief in the complaint Gustavus filed alleges that the Defendants engaged in a pattern of corrupt activity in misrepresenting the value of their apartment complex, and that in so doing Defendants engaged in the following criminal violations: theft by deception, R.C. 2913.02(A)(3); telecommunications fraud, R.C. 2913.05; money laundering, R.C. 1315.55(A)(3); tampering with records and uttering tampered records, R.C. 2913.42(A)(1) and 2913.42(A)(3); wire fraud, 18 U.S.C. 1343, and mail fraud, 18

U.S.C. 1343; and mail fraud, 18 U.S.C. 1341. As relief, Gustavus asked the court to impose the sanctions authorized by R.C. 2923.34(B)(1), (2), (E) and (F), discussed above.

{¶ 25} The defenses to arbitration identified in *Doctor's Associates, Inc.,* fraud, duress, or unconscionability, are not exclusive. Gustavus relies on cases which have held that when an arbitration provision brings about a result a statute seeks to prevent, or hinders vindication of private rights a statute confers, the arbitration provision violates public policy and is therefore void and unenforceable. Gustavus argues that the arbitration clause in its contract with Eagle is void for those reasons because it deprives Gustavus of the right to a remedy that the OCAA confers, including those R.C. 2923.34 remedies Gustavus seeks. Gustavus relies on *Fred Martin Motor Co.*

{¶ 26} In *Fred Martin Motor Co.,* a consumer commenced a Consumer Sales Practices Act claim against an auto dealer. The contract of sale the consumer signed included an arbitration clause that required the outcome of the arbitration to be kept confidential. Citing the policy of the CSPA favoring public disclosure of unfair and deceptive acts and practices by suppliers, the Ninth District Court of Appeals held the arbitration clause unenforceable for its violation of that public policy.

{¶ 27} Gustavus's reliance on *Fred Martin Motor Co.* is misplaced. Nothing in the arbitration clause in its contract with Eagle prohibits or limits application of the OCAA claim for relief in the complaint Gustavus filed. Indeed, Gustavus identifies no such impediment, and instead merely suggests that an arbitrator cannot decide its OCAA claims. We find no basis for that suggestion, for two reasons.

{¶ 28} First, as we previously pointed out, the arbitration clause in the present case is

plenary in nature, encompassing "any dispute or claim between buyer and seller arising from this agreement or the transaction contemplated herein." The pattern of corrupt activity in which Eagle allegedly engaged arose from the sale and purchase transaction between Eagle and Gustavus. There is no basis in the arbitration clause to withhold the issues the OCAA claims present from arbitration.

{¶ 29} Implicit in Gustavus's argument is a contention that the relief Gustavus seeks is outside the scope of the relief which an arbitrator's award can provide. That may be correct, but only in the sense that any relief an arbitrator's award provides is likewise inchoate. Relief is granted by the judgment the court enters pursuant to R.C. 2711.12, after confirming, modifying or correcting the arbitrator's award. The judgment is then docketed as if rendered in a civil action and in all respects has the same effect and is subject to all laws relating to a judgment in an action and may be enforced as if rendered in an action in the court in which it is entered. *Champion v. Kraftmaid Cabinetry, Inc.*, 190 Ohio App.3d 202, 2010-Ohio-5398, 941 N.E.2d 124 (11th Dist.).

{¶ 30} A second reason for rejecting Eagle's argument is found in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). In that case the plaintiff commenced an action for treble damages pursuant to 18 U.S.C. Section 1964(C) for alleged federal RICO violations. Lower courts had determined that the RICO claims for relief, being statutory, were not amenable to arbitration. The Supreme Court reversed, holding that the "duty to enforce arbitration agreements is not diminished when a party bound by an (arbitration) agreement raises a claim founded on statutory rights." 482 U.S, at 226. The Supreme Court further held that "the criminal law provisions of RICO do

not preclude arbitration of bona fide civil actions brought under Section 1964(C)," including any treble damages claims. 482 U.S. at 240. Lower federal courts have likewise held that civil RICO claims are arbitrable. *Genesco Inc. v. T. Kakiuche & Co.*, 815 F.2d 840 (2d Cir. 1987); *Nesslage v. York Securities, Inc.*, 823 F.2d 231 (8th Cir. 1987); *Mayaja, Inc., S.A. v. Bodkin*, 824 F.2d 439 (5th Cir. 1987).

{¶ 31} Ohio's Corrupt Activities Act is modeled on the federal RICO statute. *State v. Schlosser*, 79 Ohio St.3d 329, 681 N.E.2d 911 (1997). The rationale of *Shearson/American Express, Inc.* and other cases supports a finding that alleged violations of the OCAA are arbitrable. We reject Gustavus's argument that alleged OCAA violations and the various civil remedies for those violations that R.C. 2923.34 authorizes are unavailable through arbitration.

{¶ 32} Gustavus argues that, nevertheless, the statutory rights of relief the OCAA confers are not subject to arbitration under the particular terms of their agreement. The parties agreed to arbitrate "under the Commercial Arbitration Rules of the American Arbitration Association." Gustavus relies on Rule 43(a), which authorizes an award "within the scope of the agreement between the parties, including specific performance." Gustavus contends that the arbitrator is limited to "contract issues" and does not include relief allowed by the OCAA.

{¶ 33} We do not agree. The parties agreed to arbitrate "any dispute or claim between buyer or seller arising from this agreement or the transaction contemplated herein." The OCAA violations are alleged to have arisen from the transaction of sale and purchase between the parties. An arbitration clause in a contract should not be denied effect by a court

unless it can be said with positive assurance that the clause is not susceptible to an interpretation that covers the asserted dispute, and doubts should be resolved in favor of coverage. *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170, 517 N.E.2d 559 (8th Dist. 1986). In view of the fact that statutory rights and remedies are arbitrable, we cannot say with positive assurance that Gustavus's OCAA claims for relief are not within the scope of the arbitration clause in its contract with *Eagle*.

{¶ 34} Concerning the matter of attorney fees, Gustavus also argues that arbitration is unavailable because the applicable rule of the American Arbitration Association states that the arbitrator "may" award attorney fees, while R.C. 2923.34(G) provides that in a civil action a plaintiff "shall recover reasonable attorney fees in the trial and appellate courts." We do not agree. The AAA rule simply authorizes the arbitrator to award the attorney fees that R.C. 2923.34(G) mandates.

{¶ 35} The trial court rejected Gustavus's public policy defense, reasoning that acceptance of that argument would require a finding inconsistent with the holding in *Southland Corp., Shearson/American Express, and Concepcion* that Section 2 of the FAA trumps a state statute and any policy against arbitration in the statute when they act as an obstacle to the accomplishment of Congress's objectives in enacting the FAA. We agree.

B

VAGUENESS AND INCONSISTENCY

{¶ 36} Gustavus argues that the trial court erred in staying trial of the case pending arbitration because the arbitration clause contains terms that reference Ohio civil procedure and Revised Code sections which do not exist.

**{¶ 37}** At paragraph 2, the arbitration clause provides that discovery is to be conducted according to "Ohio Code of Civil Procedure section 1283.05 and to the same extent as in a civil action." There are, of course, Ohio Rules of Civil Procedure, but they contain no section 1283.05. Neither is there a chapter 12 of the Ohio Revised Code.

**{¶ 38}** Paragraph 4 of the arbitration clause contains the following statement:

By initialing in the space below you are giving up your judicial rights of discovery and appeal, unless such rights are specifically included in the "Arbitration of Disputes" provision notwithstanding this waiver of rights to discovery.

**{¶ 39}** Gustavus points out, correctly, that no section of the contract is specifically captioned "Arbitration of Disputes," which further confuses the reference to the non-existent section 1283.05 of the Ohio Code of Civil Procedure. The problem is further compounded by Paragraph 2 of the arbitration clause which states that "[t]he arbitration shall otherwise be conducted in accordance with Title 9, Part III, Ohio Code of Civil Procedure," another non-existent section.

**{¶ 40}** The trial court rejected Gustavus's arguments, finding that because the identity of the parties to be bound by the arbitration agreement and the subject matter of the dispute to be arbitrated are set forth with sufficient definiteness and clarity, these erroneous discovery references are matters for the arbitrator to resolve.

**{¶ 41}** An arbitration clause in a contract should not be denied effect by a court unless it may be said with positive assurance that the clause is not susceptible to an interpretation that covers the asserted dispute, and doubts should be resolved in favor of coverage.

*Gibbons-Grable Co. v. Gilbane Building Co.,* 34 Ohio App.3d 170, 517 N.E. 2d 559 (8th Dist. 1986); *Krafcik v. USA Energy Consultants, Inc.*, 107 Ohio App.3d 59, 667 N.E.2d 1027 (8th Dist. 1995).

{¶ 42} We agree with the trial court. The erroneous references to non-existent judicial discovery provisions are anomalies that do not detract from the essential terms of the parties' agreement to arbitrate any disputes arising from their contract and/or transaction. The references may be set aside by the arbitrator in favor of any applicable discovery provisions in the Commercial Arbitration Rules of the American Arbitration Association, which the parties agreed would govern the procedure of their binding arbitration.

{¶ 43} The trial court did not abuse its discretion in rejecting Gustavus's argument that the arbitration clause is too vague and inconsistent to support arbitration of the issues in dispute.

IV

CONCLUSION

{¶ 44} The trial court did not abuse its discretion in finding that the case is referable to arbitration on the written agreement of the parties, and did not err in staying trial of the action until arbitration of the issues in dispute has been had in accordance with the arbitration agreement, pursuant to R.C. 2711.02(B).

{¶ 45} The assignment of error is overruled. The final judgment from which the appeal was taken will be affirmed.

FAIN, J., And FROELICH, J., concur.

Copies mailed to:

Joseph C. Lucas, Esq.
Tyler W. Kayler, Esq.
J. Steven Justice, Esq.
Paul H. Shaneyfelt, Esq.
Ray. C. Freudiger, Esq.
Thomas J. Kendo, Jr., Esq.
Hon. Michael Tucker