JOURNAL ENTRY AND OPINION
{¶ 1} This is a consolidated appeal in which appellant, city of North Olmsted ("the City"), appeals the final judgment of the Cuyahoga County Common Pleas Court that confirmed and enforced certain arbitration awards, as well as the trial court's denial of relief from judgment and grant of an award of prejudgment interest. For the reasons stated herein, we affirm.
 {¶ 2} This matter came before the trial court upon the City's applications to vacate or modify arbitration awards filed on May 26, 2005, and July 11, 2005. We adopt the statement of facts that was succinctly set forth by the trial court as follows:
 {¶ 3} "FACTS
 {¶ 4} "The facts of this case are clear and the parties have submitted several joint stipulations of fact, as follows. The Plaintiff City of North Olmsted, Ohio (hereinafter `City') and the Defendant International Association of Firefighters, Local 1267, AFL-CIO, CLC (hereinafter `Union') are parties to a Collective Bargaining Agreement (hereinafter `CBA') dated January 1, 2004, through December 31, 2006. The CBA controls both Applications to Vacate Arbitration Award filed by the Plaintiff. On February 28, 2006, Stephen Hayford issued an Arbitration Award in FMCS Case No. 040702-55936-8 (hereinafter `Hayford Award'), which is the subject of the Application to Vacate or Modify Arbitration Award of this Court's case number CV-05-563879. *Page 4 
On May 5, 2005, Jonathan Klein issued an Arbitration Award in FMCS Case No. 040630-55931-8 (hereinafter `Klein Award'), which is the subject of the Application to Vacate or Modify Arbitration Award of this Court's case number CV-05-567299.
 {¶ 5} "HAYFORD AWARD
 {¶ 6} "On June 27, 2001, an agreement regarding Overtime Station Manning and Call Back Procedures (hereinafter `OSM/CBP') was signed `as agreed to and accepted by the Fire Department and IAFF Local 1267' by Former Fire Chief Ed Bak and Union President David Boatman. This OSM/CBP agreement was in place and used for approximately 33 months without change. On March 25, 2004, then current Fire Chief Tom Klecan issued a Department Operation Guideline that changed the terms of the OSM/CBP. Chief Klecan's guideline unilaterally changed the ways in which Fire Fighters would be called back to duty. The Union responded by filing a grievance, one day later, alleging that the City had violated the parties' CBA. The parties proceeded through a grievance procedure and mutually selected a neutral arbitrator to handle the grievance from a list of arbitrators provided by the Federal Mediation and Conciliation Service. On November 12, 2004, an arbitration hearing was held on the Union's grievance concerning the change to the OSM/CBP. On February 28, 2005, Arbitrator Hayford issued his Award, sustaining the Union's grievance and directing the City to rescind Chief Klecan's guideline and reinstate the conditions of the OSM/CBP. He further noted that should the City wish to change *Page 5 
the current OSM/CBP they must bargain collectively for that change with the Union as laid out in the CBA in place.
 {¶ 7} "KLEIN AWARD
 {¶ 8} "The City and the Union were parties to a predecessor CBA dated January 1, 2002, through December 31, 2003. On December 12, 2002, following fact-finding proceedings pursuant to Ohio Revised Code Chapter 4117, James Mancini issued Findings and Recommendations for the parties' predecessor CBA. In regard to the issue of overtime, Mancini recommended: `Effective January 1, 2003, overtime is to be calculated based upon a 50.4 hour workweek except for emergency call-ins and emergency hold-overs which shall be paid at the 40 hour rate.' Due to some confusion with Mancini's recommendation, on January 7, 2003, Fire Chief Klecan and Union President Boatman signed a Memorandum of Understanding (hereinafter `MOU') regarding overtime. In January 2004, a year after the MOU had been in place, the City unilaterally stopped complying with the MOU and began paying all overtime at the 50.4 hour rate, except emergency hold over, emergency call back, and acting officer. In February 2004, the Union filed another grievance alleging that the City had violated the CBA with regard to the overtime rates of pay. The parties proceeded through a grievance procedure, selecting another arbitrator from the FMCS. On November 8, 2004, an arbitration hearing was held on the Union's grievance regarding overtime pay. On May 5, 2005, Arbitrator Klein issued his Award, sustaining the Union's grievance and directing the City to apply the definition of overtime rate of pay in accordance with the MOU dated *Page 6 
January 7, 2003 for the duration of the current CBA. Further, he directed the City to review the overtime worked by members of the bargaining unit starting January 1, 2004, to verify that all overtime was paid in accordance with the MOU, and that any lost compensation due to payment at an incorrect overtime rate be paid to those employee(s) who worked overtime."
 {¶ 9} Upon the above facts, the trial court confirmed and enforced both the Hayford Award and the Klein Award. The City filed a motion for relief from judgment that was denied by the trial court. Thereafter, a revised judgment was issued by the trial court. The trial court also granted prejudgment and postjudgment interest to the Union. The City appealed the trial court's rulings, and the matter has been consolidated for review. The City raises six assignments of error, which are addressed below.
 {¶ 10} The City's first assignment of error provides as follows:
 "I. The trial court order violates R.C. 2711.10(D) and the court erred by failure to vacate the arbitration awards as unlawful, arbitrary and capricious, in excess of authority, and drawn from the essence of extraneous, noncontractual documents which contradict express provisions of the collective bargaining agreement (CBA), as follows:
 "(A) Arbitration awards capriciously imposed bargaining obligations and denied exercise of management rights to modify staffing policy (Hayford) and to rescind unauthorized overtime payments (Klein) contrary to express CBA terms and [State Employment Relations Board] law;
 "(B) Klein Award unlawfully exceeded authority and review of alleged violation under 2002-2004 CBA by reinstatement of *Page 7 memorandum of understanding (MOU) as financial overtime obligation of the 2004-2006 CBA."
 {¶ 11} First we note that an arbitrator's award is presumed to be valid. Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.
(1990), 49 Ohio St.3d 129. When parties agree to submit their dispute to binding arbitration, they agree to accept the result, regardless of its legal or factual accuracy. Goodyear v. Local Union No. 200 (1975),42 Ohio St.2d 516, certiorari denied, 423 U.S. 986. Appellate review does not extend to the merits of such an award absent evidence of material mistake or extensive impropriety. Id.
 {¶ 12} "An arbitration award may be challenged only through the procedure set forth in R.C. 2711.13 and on the grounds enumerated in R.C. 2711.10 and 2711.11. The jurisdiction of the courts to review arbitration awards is thus statutorily restricted; it is narrow and it is limited." Miller v. Gunckle, 96 Ohio St.3d 359, 362-363,2002-Ohio-4932 (internal citations and quotations omitted).
 {¶ 13} R.C. 2711.10 provides in pertinent part: "In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if: * * * (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." "R.C. 2711.10 limits judicial review of arbitration to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority."Goodyear, *Page 8 42 Ohio St.2d 516, at paragraph two of the syllabus. Further, pursuant to R.C. 2711.11, a court shall modify an arbitration award if there is an evident material mistake in the award; the arbitrator awarded upon a matter not submitted to him; or the award is imperfect in a way not affecting the merits of the controversy.
 {¶ 14} To determine if the arbitrator exceeded his power, the trial court must first determine whether the arbitrator's award draws its essence from the collective bargaining agreement of the parties.Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn.,Local 11, AFSCME, AFL-CIO (1991), 59 Ohio St.3d 177. This is established where "there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful."Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn.Assn. (1986), 22 Ohio St.3d 80. So long as the arbitrator is arguably construing the contract, the trial court is obliged to affirm its decision. Summit Cty. Bd. of Mental Retardation DevelopmentalDisabilities v. Am. Fedn. of State, Cty. Mun. Emp. (1988),39 Ohio App.3d 175. This is so because it is the arbitrator's determination for which the parties bargained. Goodyear, 42 Ohio St.2d 516.
 {¶ 15} In the case before us, the City argues that the arbitrators exceeded their authority by applying extraneous policy documents, i.e., the Overtime Station Manning and Call Back Procedures ("OSM/CBP") and the Memorandum *Page 9 
of Understanding ("MOU"), rather than the terms of the Collective Bargaining Agreement ("CBA"). More specifically, the City states that the Klein Award follows the MOU rather than the CBA language. The City claims that the Hayford Award inserted terms of the OSM/CBP into Section 3.1 of the CBA, which generally provides a duty to bargain.
 {¶ 16} The City also points to Section 7.3, Step 4(A) of the CBA, which provides that the arbitrator has no authority to add to, subtract from, or in any manner alter the specific terms of the CBA. Additionally, the City asserts that the arbitrators' decisions contradicted two separate fact-finding recommendations and the decision of the State Employment Relations Board ("SERB"), which found that the City had the authority to unilaterally abrogate the staffing and overtime procedures without bargaining.
 {¶ 17} We review each of the arbitration awards separately.
The Klein Award
 {¶ 18} The issue before Arbitrator Klein was whether the City properly applied the definition of overtime rate of pay as contained in Article I of the CBA and any other controlling agreements. Article I of the CBA dated January 1, 2002 through December 31, 2003, defined "overtime rate of pay" as follows:
 "The rate of pay equal to one and one-half (1-1/2) times the Basic Hourly Rate of Pay including Longevity compensation if applicable. During the year 2002, overtime rate of pay *Page 10 shall be calculated by dividing the annual rate by 2080 hours. Effective January 1, 2003, overtime is to be calculated based upon a 50.4 hour work week except for emergency call-ins and emergency hold-overs which shall be paid at the 40 hour rate"
Emphasis added.
 {¶ 19} The language with respect to overtime calculation effective January 1, 2003, was taken from the fact-finding recommendations of James E. Mancini. Because of some confusion with Mancini's recommendation, Fire Chief Tom Klecan and Union President David Boatman signed a Memorandum of Understanding ("MOU") regarding overtime. The MOU specified items to be paid at the 40 hour overtime rate of pay and items to be paid at the 50.4 hour overtime rate of pay. Items included within the 40 hour rate of pay were as follows: "1) Callback, 2) Holdover, 3) Acting in the capacity of a higher rank (Acting Officer), 4) Shift Manning, excluding shift manning caused by partial compensatory time off, [and] 5) Shift manning, excluding shift manning caused by schooling but to be determined on a case by case basis by the Fire Chief."
 {¶ 20} The MOU was followed by the fire chief in 2003. The City states that the MOU extended the 40 hour overtime rate beyond emergency call-ins and emergency holdovers, as authorized by the 2002-2004 CBA, and granted the more favorable rate for acting officers and other nonemergency shift manning *Page 11 
circumstances. However, Arbitrator Klein recognized in his report that "shift manning" was a circumstance in which a firefighter might be called back to work. He also recognized there was confusion over the overtime rate for acting officers and the Union's position that applying the lower rate would violate Article XVII of the CBA, which provides for additional overtime pay to acting officers.
 {¶ 21} In January 2004, the City unilaterally stopped complying with the MOU and changed the manner by which the overtime rate of pay was calculated. The Union's grievance followed.
 {¶ 22} Arbitrator Klein recognized the limitations of his authority in his report. He also recognized that the parties retained the ability to enter an agreement that reflected their own interpretation of their contract. In effect, he found that the MOU represented an agreed interpretation and/or application of the CBA with respect to the overtime rate of pay. Arbitrator Klein stated as follows: "To uphold the intended meaning of the contract language by reference to the MOU is to employ the best evidence of the parties' intent with respect to application of the Mancini Report's recommendation. * * * In sum, the City seeks to have the arbitrator interpret the collective bargaining agreement contrary to the parties' own understanding of its terms." Arbitrator Klein sustained the Union's grievance and directed the City to apply the definition of overtime rate of pay as contained in Article I in accordance with the MOU for the *Page 12 
duration of the current CBA. He also made provision for any lost compensation due to payment at an incorrect overtime rate.
 {¶ 23} Arbitrator Klein did not find that the MOU was an amendment to the CBA. Further, it is evident that Arbitrator Klein did not add to, subtract from, or in any manner alter the specific terms of the CBA. Rather, he found that the MOU represented the "best evidence" of the parties' intent and, thus, their understanding of the language employed in the CBA. It is apparent to this court that Arbitrator Klein's award draws its essence from the collective bargaining agreement of the parties. Moreover, a rational nexus exists between the agreement and the arbitrator's award, and the arbitrator did not exceed the scope of his powers when he interpreted the CBA.
The Hayford Award
 {¶ 24} The issue before Arbitrator Hayford was whether the City violated any relevant terms of the CBA by unilaterally changing the call back procedure without first bargaining with the Union. Article III, Section 3.1 of the CBA dated January 1, 2004 through December 31, 2006, provided as follows: "All matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the public Employer and the exclusive representative, except as otherwise specified." *Page 13 
 {¶ 25} On June 27, 2001, former Fire Chief Ed Bak and Union President David Boatman signed an agreement regarding Overtime Station Manning and Call Back Procedures ("OSM/CBP"). The OSM/CBP set forth general guidelines for call back, as well as the specific procedure for call back in different situations. The agreement was in place until March 25, 2004, when Fire Chief Tom Klecan issued a department operation guideline ("2004 DOG") that effectively revoked the terms of the OSM/CBP and unilaterally changed the manner in which firefighters would be called back to duty. The Union's grievance followed.
 {¶ 26} Arbitrator Hayford recognized that the City and the Union had followed the terms of the OSM/CBP for some thirty-three months. He determined that although the OSM/CBP itself was not a part of the CBA, the terms thereof became an established and "mutually recognized, wage and hours-related condition of employment." He found that Article III, Section 3.1 of the CBA required the City to bargain for any changes to established conditions of employment and that the City violated the CBA by failing to bargain for any changes to the terms of the OSM/CBP. Arbitrator Hayford sustained the Union's grievance and ordered the City to rescind the 2004 DOG and in its place reinstate the conditions the OSM/CBP.
 {¶ 27} The City argues that the CBA, via Sections 3.3 and 10.1, specifically retained staffing and overtime authority among management rights and gave the fire chief final authority in determining the need for overtime. It claims that *Page 14 
the OSM/CBP granted staffing and overtime for firefighters via automated dispatcher rather than by and through the specific authorization of the fire chief. The City further claims that the 2004 DOG reasserted management rights to control staffing and overtime pursuant to the CBA.
 {¶ 28} Arbitrator Hayford found that the broadly worded language of Section 3.3 regarding management rights did not trump the bargaining obligation under Section 3.1 with regard to established conditions of employment. He also determined that "Section 10.1 did not provide clear indication that the parties intended the Fire Chief could unilaterally abrogate an established, mutually acknowledged condition of employment pertaining to call back."
 {¶ 29} Upon our review, we do not find that Arbitrator Hayford exceeded the scope of his authority. Arbitrator Hayford examined Article III, Section 3.1 of the CBA, along with other related sections, and recognized that the City had an obligation to bargain any changes to established conditions of employment, including those established under the OSM/CBP. Arbitrator Hayford determined that the City's unilateral implementation of the 2004 DOG was in violation of Article III, Section 3.1 of the CBA. Our review reflects that Arbitrator Hayford's award draws its essence from the CBA and that a rational nexus exists between the agreement and the arbitrator's award. *Page 15 
 {¶ 30} Finding no error in the trial court's decision, we overrule the City's first assignment of error.
 {¶ 31} The City's second assignment of error provides as follows:
"II. The trial court order violates R.C. 4117.14(C)(6)(a) and the courterred by failure to vacate the Klein Award as contrary to CBA terms andbinding fact-finding recommendations for 2004-2006 CBA."
 {¶ 32} The City states that both parties accepted the fact-finding recommendations of James Mancini and Harry Graham within the seven-day period provided for in R.C. 4117.14(C)(6)(a), and pursuant to that statute, "the recommendations shall be deemed agreed upon as the final resolution of the issues submitted and a collective bargaining agreement shall be executed between the parties."[1] The City argues that the Klein Award was contrary to the fact-finding recommendations of Mancini and Graham and was not limited to the *Page 16 
predecessor 2002-2004 CBA. It claims that Arbitrator Klein incorporated the Memorandum of Understanding ("MOU") in lieu of the Mancini language. The City also states that the Klein Award explicitly contradicted Graham's recommendation for the 2004-2006 CBA.
 {¶ 33} The Union argues that the Klein Award originated from the parties' confusion as to the meaning of Mancini's recommendation concerning the calculation of overtime pay. The language recommended by Mancini with regard to the overtime rate of pay was included in the 2002-2004 CBA, as well as the 2004-2006 CBA. As found under the first assignment of error, Arbitrator Klein did not exceed his authority by construing Article I consistent with the parties' own interpretation of the language as set forth in their MOU.
 {¶ 34} With respect to the fact-finding recommendations of Graham, the Union asserts that the City's interpretation was found nowhere in the language of the 2004-2006 CBA. Arbitrator Klein recognized that "although it appears that Arbitrator Graham recommended the City's current interpretation (Chief Klecan's January 1, 2004 directive), he also recommended that any disagreement on this very issue subsequent to conclusion of the agreement could be brought before SERB or an arbitrator. * * * Therefore, the arbitrator concludes that the impact of the parties' negotiations and the Graham Report does not lead to a finding that the subject matter of the disputed MOU was `negotiated otherwise.' *Page 17 
It was simply delayed to another day — either before SERB or through the contract's grievance procedure — and that day has arrived."
 {¶ 35} We are bound to apply a limited review of this matter. As the Ohio Supreme Court has stated: "`Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract.'" Southwest Ohio Regional Transit Auth. v. AmalgamatedTransit Union, Local 627, 91 Ohio St.3d 108, 110, 2001-Ohio-294, quotingUnited Paperworkers Internatl. Union, AFL-CIO v. Misco, Inc. (1987),484 U.S. 29, 37-38. Moreover, this court has stated: "it is the law in Ohio that `[w]hen disputing parties agree to submit their controversy to binding arbitration, they agree to accept the result, even if it is legally or factually wrong. * * * If the parties could challenge an arbitration decision on the ground that the arbitrators erroneously decided the legal or factual issues, no arbitration would be binding.'"Miller v. Mgt. Recruiters Internatl., Inc., *Page 18 
Cuyahoga App. No. 91114, 2009-Ohio-236, quoting Huffman v. Valletto
(1984), 15 Ohio App.3d 61, 63.
 {¶ 36} We find that Arbitrator Klein's decision was clearly within the purview of the arbitrator's authority as a matter of law. By entering into binding arbitration, the parties agreed to be bound by such determinations. Therefore, the trial court was correct in not vacating the arbitrator's award. The City's second assignment of error is overruled.
 {¶ 37} The City's third assignment of error provides as follows:
 "III. The trial court order violates R.C. 4117.11 and the court erred by failure to vacate awards as contrary to final determination of State Employment Relations Board (SERB) on subjects of bargaining upon review [of] unfair labor practice (ULP) claims."
 {¶ 38} The City argues that the arbitration awards are contrary to the final determination of SERB (State Employment Relations Board) issued pursuant to R.C. 4117.11.
 {¶ 39} The Ohio Supreme Court has held that SERB "has exclusive jurisdiction to decide matters committed to it pursuant to R.C. Chapter 4117." Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police,Capital City Lodge, No. 9 (1991), 59 Ohio St.3d 167, paragraph one of the syllabus. SERB's exclusive jurisdiction, however, does not extend to "anything that `arguably' *Page 19 
constitutes an unfair labor practice." East Cleveland v. East ClevelandFirefighters Local 500, I.A.F.F. (1994), 70 Ohio St.3d 125, 127. Moreover, "[t]he General Assembly's vesting of SERB with exclusive jurisdiction to determine unfair labor practices defined in R.C. 4117.11
was never meant to foreclose parties to a collective bargaining agreement from settling differences in interpreting provisions of their agreement through the process of binding arbitration, especially given the clear language of R.C. 4117.10(A) * * *." Id. at 128. Thus, although R.C. Chapter 4117 provides SERB with exclusive jurisdiction over certain issues, R.C. 4117.10(A) permits the employer and employee, through the employee's exclusive representative, to commit to final and binding arbitration of grievances through a collective bargaining agreement.
 {¶ 40} Here, the issue of whether the collective bargaining agreement had been violated was a matter to be resolved by arbitration. SeeInternatl. Assn. of Firefighters Local 92 v. Toledo (1999),136 Ohio App.3d 56, 62. Thus, although an unfair labor charge was filed, the Union also had an arbitrable grievance. Under these circumstances, it has been held that "[t]he arbitrator has the power to interpret the terms of the contract. He is not bound by the findings of the SERB." Id.
 {¶ 41} The parties in this case agreed to submit the matters to final binding arbitration and to accept the arbitrator's award "regardless of its legal or factual accuracy." See Marra Constructors, Inc. v.Cleveland Metroparks System (1993), *Page 20 82 Ohio App.3d 557, 562, citing Goodyear, 42 Ohio St.2d 516. We find no error in the trial court's confirmation of the arbitrators' award. Additionally, we are unpersuaded by the City's res judicata argument. The City's third assignment of error is overruled.
 {¶ 42} The City's fourth assignment of error provides as follows:
 "IV. The trial court order violates R.C. 2711.11 and the court erred by failure to modify the Klein Award to limit the remedy to alleged violation of 2002-2004 CBA rather than the reinstatement of the overtime MOU contrary to terms of 2004-2006 CBA."
 {¶ 43} The City contends that the trial court unlawfully confirmed the Klein Award by extending the Memorandum of Understanding ("MOU") from the 2002-2004 CBA to the 2004-2006 CBA in direct contravention of fact-finder recommendations and the final SERB order. The City claims that the grievance arose under the predecessor 2002-2004 CBA and was still in arbitration after a new 2004-2006 CBA cycle. The City argues that Arbitrator Klein's award should have been vacated or modified on the ground that he "awarded on a matter not submitted" and it is "imperfect in matter or form not affecting the merits of the controversy." R.C. 2711.11(B) and (C).
 {¶ 44} The grievance filed by the Union concerned the interpretation of Article I of the CBA in regard to the calculation rate for overtime pay. The same *Page 21 
definition for "overtime rate of pay" appeared in both the 2002-2004 CBA and the 2004-2006 CBA. Arbitrator Klein recognized the fact-finding recommendations of Graham and found that the Graham report recommended that any disagreement as to the method by which overtime should be calculated could be brought before an arbitrator. Arbitrator Klein interpreted the "overtime rate of pay" provision in accordance with the parties' intent as expressed in the MOU. He ordered the parties to "apply the definition of overtime rate of pay as contained in Article I in accordance with the MOU dated January 7, 2003 * * *, for the duration of the current [2004-2006 CBA] unless otherwise modified by written agreement of the parties."
 {¶ 45} It is well settled that "an arbitrator has broad authority to fashion a remedy" when a CBA violation has occurred. Board of Trusteesv. FOP, Ohio Labor Council, 81 Ohio St.3d 269, 273, 1998-Ohio-629. We find that it was within Arbitrator Klein's authority to impose the above award. It is clear that the arbitrator was construing the contract and that the award draws its essence from the CBA. We find that the arbitrator's decision was not in contravention of the terms of the CBA and was not unreasonable, arbitrary, capricious, or unlawful.
 {¶ 46} The City's fourth assignment of error is overruled.
 {¶ 47} The City's fifth assignment of error provides as follows: *Page 22 
 "V. The trial court order violates R.C. 2711.09 and the court erred by issuance of prejudgment interest award pursuant to R.C. 1343.03 contrary to Klein Award and when the Union did not timely move or demonstrate statutory grounds to vacate or modify same."
 {¶ 48} The City argues that the Klein Award did not impose prejudgment interest and that the trial court erred by modifying the award to include prejudgment interest. In support of its argument, the City relies on Miller v. Gunckle, 96 Ohio St.3d 359, 2002-Ohio-4932, in which the court ruled that an arbitration panel has authority to award prejudgment interest.
 {¶ 49} Miller does not address the issue of whether a trial court may award prejudgment interest on an arbitration award. As recognized inHandel's Ents. v. Wood, Mahoning App. No. 05 MA 70, 2005-Ohio-6922:
 "Miller * * * [does] not stand for the proposition that a common pleas court errs when it grants prejudgment interest even though the request was not first made to the arbitration panel. R.C. 1343.03(A) states that prejudgment interest can be granted upon `all judgments, decrees, and orders of any judicial tribunal.' The court of common pleas is a judicial tribunal and its order confirming the arbitration award is a judgment. Thus, it does have the authority to award prejudgment interest. Therefore, we find no error with the common pleas court's grant of prejudgment interest *Page 23 despite the fact that it was not first raised to the arbitration panel."
 {¶ 50} We agree with the above authority and uphold the trial court's award of prejudgment interest. The City's fifth assignment of error is overruled.
 {¶ 51} The City's sixth assignment of error provides as follows:
 "VI. The trial court order violates clearly established public policy governing the statutory relationship between SERB and arbitrators, as well as public policy imposing fiscal limitations on municipal appropriations and expenditures."
 {¶ 52} Finally, the City argues that the arbitration awards should be vacated on public policy grounds.
 {¶ 53} "[V]acating an arbitration award pursuant to public policy is a narrow exception to the `hands off policy that courts employ in reviewing arbitration awards and `does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy.'" Southwest Ohio Regional Transit Auth., 91 Ohio St.3d 108, 112, quoting United Paperworkers Internatl. Union, AFL-CIO, 484 U.S. at 43. The Ohio Supreme Court has cautioned that "the public policy must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." Id. (citations and quotations omitted).
 {¶ 54} The City's argument centers on claimed public policies embodied within R.C. Chapter 4117 with respect to SERB jurisdiction and its final order, *Page 24 
as well as final and binding fact-finder recommendations. The City also points to the public policy to protect taxpayers against the unauthorized expenditure of public funds.
 {¶ 55} The City has not established a dominant and well-defined public policy that would render the arbitration awards in this matter unlawful. "The fact that an arbitration panel grants an award * * * which does not allegedly conform to Ohio law is not clearly against public policy."Handel's, supra. We have already determined that the arbitrators did not exceed their authority in issuing their awards. We see no public policy emanating from the statutes or otherwise that would require vacation of the arbitration awards.
 {¶ 56} The City's sixth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, JUDGE COLLEEN CONWAY COONEY, A.J., and *Page 25 
MARY J. BOYLE, J., CONCUR
[1] R.C. 4117.14(C)(6) reads as follows: "Not later than seven days after the findings and recommendations are sent, the legislative body, by a three-fifths vote of its total membership, and in the case of the public employee organization, the membership, by a three-fifths vote of the total membership, may reject the recommendations; if neither rejects the recommendations, the recommendations shall be deemed agreed upon as the final resolution of the issues submitted and a collective bargaining agreement shall be executed between the parties, including the fact-finding panel's recommendations, except as otherwise modified bythe parties by mutual agreement. If either the legislative body or the public employee organization rejects the recommendations, the board shall publicize the findings of fact and recommendations of the fact-finding panel. The board shall adopt rules governing the procedures and methods for public employees to vote on the recommendations of the fact-finding panel." (Emphasis added.) *Page 1