PATRICIA ANN BLACKMON, J.:
{¶ 1} The city of Cleveland ("the City") appeals from the trial court's journal entry denying in part and granting in part the City's motion to vacate or modify arbitration award and the Fraternal Order of Police Lodge 8's ("FOP") motion to confirm and enforce arbitration award. The City assigns the following error for our review:
I. The trial court erred to the prejudice of appellant by affirming part of the arbitrator's award because the arbitrator exceeded his powers and also so imperfectly executed them that a mutual, final, and definite award upon the subject matter of the arbitration was not made because he issued an arbitration decision that was arbitrary and capricious, and, thereby, dispensed his own brand of industrial justice.
{¶ 2} Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
{¶ 3} On November 29, 2012, over 100 police officers in 58 patrol cars as well as several unmarked police cars were involved in a 23-minute pursuit of a speeding vehicle, which culminated in the shooting deaths of Timothy Russell and Malissa Williams. Two investigations[1] of the incident *237 revealed that 13 Cleveland police officers fired more than 137 bullets into the vehicle, when the pursuit ended in a parking lot in East Cleveland. According to the investigations, Russell and Williams were unarmed. At least 25 of the officers involved in the pursuit, nine of whom fired their weapons, were under the command of Cleveland Police Sergeants Randolph Daley, Patricia Coleman, Brian Chetnik, and Matthew Putnam (collectively "the Grievants"). The investigations determined that, in general, the Grievants failed to supervise their subordinates and failed to comply with various police department policies.
{¶ 4} On June 11, 2013, the City suspended without pay Coleman for 20 days; Daley for 15 days; and Putnam for ten days. On June 13, 2013, the FOP filed grievances pursuant to the collective bargaining agreement ("the CBA") between the City and the FOP on behalf of Coleman, Daley, and Putnam requesting the following relief: that the suspensions be rescinded; that the sergeants be "made whole" for time lost due to the suspensions; that disciplinary records related to the suspensions be removed from the sergeants' files; and that "the division" publicly notify the City's police force that the sergeants have been cleared of the allegations.
{¶ 5} On July 18, 2013, the City suspended Chetnick without pay for ten days. On July 22, 2013, the FOP filed a grievance pursuant to the CBA on behalf of Chetnik, requesting relief identical to that requested for Coleman, Daley, and Putnam.
{¶ 6} On August 7, 2013, the City denied all four grievances, finding that "[m]anagement acted in a proper manner and no clause of the [CBA] was violated." The FOP invoked the arbitration provision of the CBA, and on March 19 and 20, 2014, an arbitrator held hearings on the grievances.
{¶ 7} On May 24, 2015, the arbitrator issued an award finding that the City did not have "just cause" to discipline any of the Grievants. The award revoked Coleman, Daley, Putnam, and Chetnik's suspensions in full and permanently removed "all departmental records of these respective suspensions" from the City's files. On August 18, 2015, the City initiated this case by filing a motion to vacate or modify the arbitration award. In turn, the FOP filed an application to confirm and enforce the arbitration award. On March 14, 2017, the court issued an opinion enforcing the arbitration award in part and vacating the award in part. Specifically, the court granted the City's motion to vacate the award regarding the removal and destruction of the disciplinary records from the Grievants' files and granted the FOP's motion to enforce the award revoking the suspensions.
{¶ 8} Put another way, the court upheld the arbitrator's conclusion that the City did not have just cause to take any disciplinary action against the Grievants. In addition, the court found that the arbitrator lacked authority to purge the Grievants' disciplinary files. It is from this order that the City appeals.
Standard of Review
{¶ 9} Courts review arbitration awards under the limited standard found in R.C. 2711.10, which states, in pertinent part, as follows: "the court of common pleas shall make an order vacating the award * * * if * * * (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Generally, an *238 arbitrator has not exceeded his or her authority when an arbitration award "draws its essence" from the underlying contract. Bd. of Edn. of Findlay City School Dist. v. Findlay Edn. Assn. , 49 Ohio St.3d 129, 132, 551 N.E.2d 186 (1990). "An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Education Assn. , 22 Ohio St.3d 80, 84, 488 N.E.2d 872 (1986).
{¶ 10} An appellate court's standard regarding arbitration awards is confined to reviewing the trial court order. Orwell Natural Gas Co. v. PCC Airfoils, L.L.C. , 189 Ohio App.3d 90, 2010-Ohio-3093, 937 N.E.2d 609 (8th Dist.2010). "The substantive merits of the original arbitration award are not reviewable on appeal absent evidence of material mistake or extensive impropriety. A de novo review of the merits of the dispute is not within the contemplation of the statute." (Citation omitted.) Id. at ¶ 8.
Analysis
The Arbitration
{¶ 11} Article II, Section 2 of the CBA states that the City has a right to "(e) Suspend, discipline, demote or discharge for just cause, layoff, transfer, assign, schedule, promote, or retain members * * *."
{¶ 12} Article XX, Sections 1 and 2 of the CBA state that FOP members have a right to present a grievance disputing "the disciplining of an employee." If a grievance is not resolved by the parties, the FOP may submit the matter to arbitration. Article XX, Section 4 states the following:
In the event a grievance goes to arbitration, the arbitrator shall have jurisdiction only over disputes arising out of grievances as to the interpretation and/or application and/or compliance with the provisions of this [CBA], including all disciplinary actions and in reaching his decision, the arbitrator shall have no authority (1) to add or subtract from or modify in any way the provisions of this [CBA]; (2) to pass upon issues governed by law; or (3) to make an award in conflict with law.
{¶ 13} During the arbitration in the case at hand, the City alleged that the Grievants failed to supervise their subordinates and failed to comply with various departmental policies, including "failing to determine the location and actions of all patrol officers assigned to them during the * * * pursuit" and shooting. The City specifically refers to the Grievants' failure to use "communication and tracking resources to evaluate and control" the incident.
{¶ 14} The FOP, on the other hand, argued during arbitration that the City did not have "just cause" to discipline the Grievants, as required by Article II, Section 2, Subsection (e) of the CBA. According to the FOP, none of the Grievants had prior disciplinary action taken against them, and they all "held the understanding that they were dealing with mobile active shooters." The FOP further argued that the Grievants acted according to "custom and practice" regarding a vehicle pursuit, and "[t]he physical assets and/or training available to the [Grievants] on November 29, 2012 were deficient or non-existent * * *."
{¶ 15} The arbitrator concluded that, in some instances, the Grievants did not violate department policy, and that, in other instances, malfeasance occurred but was excused "given the exigent circumstances and chaotic incident and its aftermath."
*239 For these reasons, the arbitrator found that the City lacked just cause to discipline the Grievants.
The City's Arguments on Appeal
{¶ 16} On appeal, the City alleges that the "award is clearly beyond the arbitrator's authority, is beyond the essence of the agreement, and denies the parties the benefit of their agreement." As support for its position, the City compares this case to Fraternal Order of Police, Lodge 8 v. Cleveland , 8th Dist. Cuyahoga No. 102565, 2015-Ohio-4188, 2015 WL 5867410, in which this court affirmed the two-year demotion imposed by an arbitrator regarding Cleveland Police Sergeant Michael Donegan for his role in the same November 29, 2012 pursuit. Donegan held the same departmental rank as the Grievants in the case at hand and was also accused of failing to supervise and violating departmental polices during the pursuit. Therefore, according to the City, under the CBA, it is arbitrary and capricious if the Grievants are not subject to the same or similar discipline as Donegan. However, the discipline resulting from the two arbitrations is quite different: Donegan received a two-year demotion with loss of pay and the Grievants in the instant case received no discipline. This, the City argues, is arbitrary and capricious.
{¶ 17} Furthermore, the City argues that the arbitrator's thought process in finding no just cause for discipline was arbitrary and capricious. For example, the arbitrator found that the "systemic failure" of the Cleveland Police Department during this incident should be applied to police members with rank of lieutenant and above, which does not include the Grievants, who are sergeants. In weighing this "escalating authority" argument, the arbitrator found as follows: "I * * * do not choose to lay 'fault' at the feet of Sgt. Coleman or any of the other sergeants reviewed herein for either their judgment or conduct connected with this approximately twenty-five minute vehicle pursuit and apprehension." According to the City, the arbitration award is ripe with biased statements, and the arbitrator dispensed "his own brand of industrial justice."
{¶ 18} For example, the arbitrator concluded the following:
While the [City] is no doubt rankled by the number of responding units and patrolmen who "self-dispatched" themselves to the chase it cannot by shear will affix blame to the [Grievants] for what [their] responding officers undertook on their own. Had this transpired earlier in the platoon's tour for that night and the [Grievants] went on for, say, two (2) or three (3) hours without knowing the whereabouts of [their] charges or the strength of their self-deployment I'd have a different view.
{¶ 19} In addition, as to whether Cleveland Police Deputy Chief Williams issued a particular order at the scene, the arbitrator noted that "I would have appreciated hearing that from Chief Williams." The arbitrator also noted that the Grievants were subject to "a great deal of public scrutiny and media attention" as a result of this incident. The arbitrator concluded that "I cannot escape a fairly pervasive feeling that these disciplinary decisions were designed to play to a different audience rather than to correct and rehabilitate in the labor-management sense."
The FOP's Arguments on Appeal
{¶ 20} The FOP argues on appeal that there is no basis to vacate the arbitration award, because it draws it essence from the CBA and the arbitrator properly reviewed the parties' arguments, facts, and evidence. According to the FOP, the arbitration award "resolved the precise issues that the [p]arties put before [the arbitrator] in accordance with the CBA * * *."
*240 The FOP further argues that the Donegan arbitration outcome-upholding his demotion under similar circumstances-is "completely irrelevant" to the case at hand. Additionally, the trial court's statement that it "likely would have reached a different result and found that some measure of discipline for just cause existed" "has absolutely no bearing on the propriety of the [award in the instant case] whatsoever."
{¶ 21} Upon review, we find that the arbitrator acted within his authority when revoking the Grievants' suspensions. The arbitration concerned disputes over disciplinary actions, which are expressly authorized in the CBA. Thus, the arbitration award "draws its essence" from the CBA. Furthermore, although it may be hard to reconcile a two-year demotion for one actor and no discipline for other actors, we cannot say that this award is arbitrary or capricious. Arbitrary is defined as "founded on prejudice or preference rather than on reason or fact." Black's Law Dictionary 125 (10th Ed.2014). Additionally, capricious means "contrary to the evidence or established rules of law." Id. The arbitrator in the case at hand wrote a detailed rationalization of why, in his opinion, the City failed to show just cause for suspending each of the Grievants.
Were the arbitrator's decision to be subject to reversal because a reviewing court disagreed with findings of fact or with an interpretation of the contract, arbitration would become only an added proceeding and expense prior to final judicial determination. This would defeat the bargain made by the parties and would defeat as well the strong public policy favoring private settlement of grievance disputes arising from collective bargaining agreements.
Goodyear Tire & Rubber Co. v. Local Union No. 220, United Rubber, Cork, Linoleum & Plastic Workers of Am. , 42 Ohio St.2d 516, 330 N.E.2d 703,706 (1975).
{¶ 22} This court has held that "once a reviewing court determines that the arbitrator's award draws its essence from the parties' contract and is not unlawful, arbitrary or capricious, the reviewing court has no authority to vacate the award pursuant to R.C. 2711.10(D)." Marra Constructors, Inc. v. Cleveland Metroparks Sys. , 82 Ohio App.3d 557, 563, 612 N.E.2d 806 (8th Dist. 1993).
{¶ 23} The City and the FOP voluntarily entered into the CBA, and by doing so, agreed to resolve their disputes via binding arbitration. One of the consequences of this choice is that the City's discretion concerning employee discipline is significantly impacted in that arbitration becomes the forum for dispute resolution.
Contracting parties who agree to submit disputes to an arbitrator for final decision have chosen to bypass the normal litigation process. If parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceives a factual or legal error in the decision), the parties have lost the benefit of their bargain. Arbitration, which is intended to avoid litigation, would instead become merely a system of "junior varsity trial courts" offering the losing party complete and rigorous judicial review.
(Citation omitted.) Motor Wheel Corp. v. Goodyear Tire & Rubber Co. , 98 Ohio App.3d 45, 52, 647 N.E.2d 844 (8th Dist.1994).
{¶ 24} We understand the sensitivity of the events that took place on November 29, 2012, and we want to stress that the parties bargained away certain rights when they entered the CBA. As a result, the law limits the court's review of arbitration *241 awards at the appellate level, as well as at the trial court level.
{¶ 25} We do, however, agree with the trial court that the arbitrator had no authority under the CBA to order that the Grievants' files regarding these suspensions be removed. Accordingly, the court did not err by enforcing in part and vacating in part the arbitration award in this case.
Prejudgment Interest
{¶ 26} Although the City does not assign a separate error for this issue, it argues that R.C. 1343.03(C) prohibits an award of prejudgment interest and costs in this case, because the FOP failed "to make a good faith effort to settle the case." R.C. 1343.03(C) states that "If, upon motion of any party to a civil action that is based on tortious conduct * * * and in which the court has rendered a judgment, * * * the court determines at a hearing * * * that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case," the court shall award interest.
{¶ 27} However, when the FOP filed a motion for prejudgment and postjudgment interest, it relied on R.C. 1343.03(A), which states as follows: "when money becomes due * * * upon all judgments, * * * the creditor is entitled to interest at the [statutory] rate * * *."
{¶ 28} In the case at hand, the trial court granted the FOP's motion and awarded the Grievants prejudgment and postjudgment interest at the statutory rate.
{¶ 29} Upon review, we find that R.C. 1343.03(A) authorizes the trial court to grant prejudgment interest in an order confirming an arbitration award. See N. Olmsted v. Internatl. Assn., Local 1267 , 8th Dist. Cuyahoga Nos. 91300, 91301, and 91724, 2009-Ohio-960, 2009 WL 547452, ¶ 48-50 ; Handel's Ents. v. Wood , 7th Dist. Mahoning Nos. 04MA238 and 05MA70, 2005-Ohio-6922, 2005 WL 3536475, ¶ 84 ("we find no error with the common pleas court's grant of prejudgment interest despite the fact that it was not first raised to the arbitration panel").
{¶ 30} Accordingly, the City's first assigned error is overruled.
Frivolous Appeal
{¶ 31} The FOP alleges that this appeal is frivolous in violation of App.R. 23 and Loc. App.R. 23(A) and requests attorney fees and costs. This court may order an appellant to pay an appellee's attorney fees and costs upon a determination that an appeal is frivolous under App.R. 23. An appeal is frivolous if it presents no reasonable question for review. State v. G.D. , 8th Dist. Cuyahoga Nos. 104317 and 104328, 2016-Ohio-8148, 2016 WL 7298513, ¶ 25. The FOP argues that the City has "no good faith basis in law from which to appeal," and as a result, this court "must conclude that the City appealed * * * for one or more improper purpose, including delay in enforcement and harassment."
{¶ 32} We find no merit to the FOP's argument, and the request for App.R. 23 sanctions is denied.
{¶ 33} Judgment affirmed.
TIM McCORMACK, P.J., and MELODY J. STEWART, J., CONCUR

The first investigation was conducted by the Ohio Bureau of Criminal Investigation and the second by the Cleveland Police Department's critical incident review committee.