[Cite as *Cleveland v. Communication Workers of Am., Local 4340*, 2022-Ohio-2498.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                      :

    Plaintiff-Appellant,          :

                        No. 111050

    v.                            :

COMMUNICATION WORKERS
OF AMERICA, LOCAL 4340,                 :

    Defendant-Appellee.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 21, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-947588

---

### *Appearances:*

Zashin & Rich Co., L.P.A., Patrick J. Hoban, and Scott
H. DeHart; Mark Griffin, City of Cleveland Law Director
and William M. Menzalora, City of Cleveland Chief
Assistant Director of Law, *for appellant*.

Muskovitz & Lemmerbrock, LLC and Ryan J. Lemmerbrock,
*for appellee*.

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Plaintiff-appellant, city of Cleveland ("city"), appeals the trial court's decision to confirm the arbitration award in favor of defendant-appellee,

Communication Workers of America, Local 4340 ("union").  For the reasons that follow, we affirm.

## I.  Procedural History and Facts

{¶ 2} The union is the exclusive bargaining representative for the city's 16 full-time emergency medical technician supervisors, known as Captains, in the Cleveland Division of Emergency Medical Services.  The city and the union have been parties to a series of collective bargaining agreements ("CBA") negotiated under Ohio's Public Employees' Collective Bargaining Act, R.C. Chapter 4117.

{¶ 3} R.C. Chapter 4117 creates a process for the negotiation of a CBA and the resolution of any bargaining impasse.  If the parties reach an impasse, as happened in the case at bar, the matter proceeds to a fact-finding procedure pursuant to R.C. 4117.14, which involves a third-party neutral person, a "fact-finder," who conducts an evidentiary hearing and issues a report with recommended terms.  Fact-finding culminates in a final, written CBA that the parties execute and implement.  If the impasse persists after fact-finding, under statute, certain bargaining units and their employers are required to proceed to binding interest arbitration, or "conciliation."  If fact-finding fails to culminate in a final written CBA, the parties can resume their negotiations and the union may resort to a strike to bring economic force to obtain its bargaining objectives.

{¶ 4} The CBA at issue in this case was to be effective from April 1, 2016, through March 31, 2019 ("2016-2019 CBA").  The fact-finding report that established the terms of the CBA was issued on March 1, 2019.  The union voted to

approve the fact-finder's recommendations. On March 14, 2019, the State Employment Relations Board ("SERB") notified the parties that the fact-finding report was accepted and that negotiations for the 2016-2019 CBA were settled. The city's counsel prepared a draft of the 2016-2019 CBA incorporating the accepted fact-finding recommendations. The union alleged that the city's draft of the 2016-2019 CBA differed significantly from the union's interpretation of the fact-finder's wage recommendations and would not execute the CBA.

{¶ 5} On May 15, 2019, the union requested the city also begin bargaining the successor agreement to the 2016-2019 CBA; the city did not respond to the request. The parties were unable to come to an agreement on the 2016-2019 CBA. On July 18, 2019, the union filed a grievance alleging the city's failure to pay the Captains the recommended compensation was in violation of the 2016-2019 CBA, specifically Article XXVIII (Compensation) and XXXII (Uniform Allowance). The city denied the grievance, claiming the 2016-2019 CBA was "non-existent," the city would not negotiate a successor CBA, and the dispute could not be arbitrated.

{¶ 6} On August 9, 2019, the city filed an unfair labor practice ("ULP") charge with SERB claiming that the union had refused to bargain when it refused to sign the city's draft of the 2016-2019 CBA. The union again requested the city begin the process of bargaining the successor CBA, but the city refused, claiming that the 2016-2019 CBA was "non-existent" and because there was no current CBA, it would not negotiate a successor CBA. In response, on September 3, 2019, the

union filed its own ULP charge against the city for its purported refusal to bargain the 2019 successor CBA.

{¶ 7} On January 9, 2020, SERB dismissed both parties' ULP charges as untimely and for lack of merit. In its dismissal, SERB found that the union's failure to sign the tentative 2016-2019 CBA, which included the fact-finder's recommendations, could constitute a statutory violation but the city's failure to implement the terms of the deemed-accepted agreement could also constitute a statutory violation. In addition, SERB found, "The City * * * should have executed the terms of the agreement after SERB notified the parties that the agreement was deemed accepted on March 14, 2019. The successor agreement became effective on that date, whether it was signed by the parties or not." Neither party appealed SERB's decision.

{¶ 8} Following SERB's dismissal of the parties' ULP claims, an arbitration hearing was held on the union's grievance on August 31 and October 22, 2020. On February 15, 2021, the arbitrator issued his opinion and award, sustaining the union's grievance in part. The arbitrator found that SERB had jurisdiction over the ULP claims and the arbitrator had jurisdiction over the alleged contract violations:

> As to the exclusive jurisdiction of SERB in matters related to R.C. Chapter 4117, to take the position that SERB has exclusive jurisdiction in this matter is to ignore SERB's own well established precedent that both an arbitrator and SERB may have jurisdiction over a matter at once, with the arbitrator addressing the contract violation and SERB addressing the ULP. Here SERB has already addressed the ULPs filed in connection with this matter. SERB

dismissed the ULPs on the basis of the lack of probable cause that a violation occurred and for being untimely filed. Accordingly, SERB [n]o longer has a role in these proceedings. It follows that jurisdiction remains with the arbitrator to resolve the alleged contract violation.

{¶ 9} The arbitrator also rejected the city's claim that the grievance was untimely and therefore not procedurally arbitrable. The arbitrator held the union's grievance alleged a "continuing violation" of the 2016-2019 CBA, and thus the grievance could not be deemed untimely.

{¶ 10} The arbitrator stated that he examined the record of the fact-finding proceedings and determined that because the annual wage increases were "retroactive by definition," and the wage differential and the modification of the step schedule from three steps to two steps preceded the annual wage increases, the new wage schedule had to be retroactive. Further, the arbitrator stated the record showed that city had assured the union and the fact-finder that the city's proposal "includes full retroactivity so that the duration of these negotiations will not disadvantage [the union's] members," and that it was unreasonable to conclude the fact-finder intended for his recommended terms, issued in mid-March 2019, to be effective for only a couple weeks until the 2016-2019 CBA's expired on March 31, 2019. Thus, the arbitrator held, per the Restatement (Second) of Contracts, and consistent with the parties' general intent and the city's assurance, the new wages were to be retroactive.

{¶ 11} The arbitrator held there was a caveat to this conclusion that the new wages were to be retroactive. The fact-finder had indicated support for upholding

the city's wage pattern and none of the city's bargaining units had received a wage increase in 2016. Therefore, it was likely the fact-finder would not have awarded a wage increase on the date the union had proposed, April 1, 2016. The arbitrator held the fact-finder would have made the new wages effective April 1, 2017.

{¶ 12} The arbitrator summarized his conclusions, as follows:

[A] reasonable interpretation of the Final Report, and the record that preceded it, results in the following:

(1) Effective April 1, 2016, no wage increase for the Captains, consistent with the negotiating results of the other City bargaining units.

(2) Effective April 1, 2017, the New Wage Schedule is implemented. Thereafter, the 2% wage increase is applied at each step of the New Wage Schedule.

(3) Effective April 1, 2018, the 2% wage increase is applied to each step of the New Wage Schedule. The agreed upon $3,000 Equity Adjustment is to be added to each step of the New Wage Schedule, after the application of the 2% wage increase.

{¶ 13} Regarding the uniform allowance, citing the fact-finder's written recommendation, the arbitrator noted the allowance increase was to be effective "during the term of the new contract." The arbitrator stated the interpretation issue before him was whether the fact-finder intended "term of the new contract" to mean the period of April 1, 2016, to March 30, 2019, or the period of March 8, 2019, to March 30, 2019. The arbitrator concluded the fact-finder intended the term to be April 1, 2016, to March 30, 2019. In support of this finding, the arbitrator cited the fact that the wages at issue covered the period of April 1, 2016,

to March 30, 2019, and that city council had approved the union's CBA "for a period of April 1, 2016, through March 30, 2019."

{¶ 14} On May 14, 2021, the city filed an application and motion to vacate the arbitration award with the Cuyahoga County Common Pleas Court. On July 2, 2021, the union filed an application to confirm and enforce the arbitration award and a brief in opposition to the city's motion to vacate. The trial court held an oral hearing on the matter on October 14, 2021. In an order and opinion dated October 28, 2021, the trial court confirmed the arbitration award and ordered statutory pre- and post-judgment interest.

{¶ 15} In its opinion, the trial court determined that it was limited to determining whether the arbitration award drew its essence from the parties' CBA and whether the award was unlawful, arbitrary, or capricious. The court found that the arbitrator's decisions on the issues of contract formation and arbitrability were supported by the record, statute, and by SERB's dismissal of the parties' ULP claims. The court dismissed the city's argument that the CBA was "non-existent" and noted that "[t]he existence of a valid 2016-2019 CBA was notably even argued by the [city] itself in its own Unfair Labor Practices Charge to SERB." Trial Court Opinion and Order (Oct. 28, 2021), p. 5.

{¶ 16} The trial court further found that the arbitration award is based on the language and did not depart from the essence of the 2016-2019 CBA:

> When discerning the parties' intent in interpreting the language of the deemed agreed to terms of the fact-finding recommendations that were at issue with respect to retroactivity, the Arbitrator found that

those provisions had "omitted terms." The Court finds that the Arbitrator was within his authority to reconcile the issue of the missing essential terms by logically applying principles of contract law and arbitral labor law. In light of the fact that the missing essential terms were with respect to the deemed agreed to fact-finding recommendations, the Court finds that the Arbitrator was justified under these circumstances in his interpretation of the Fact-Finder's recommendations and by his examination of the record which relevantly included the parties' lengthy bargaining history and key fact-finding proceedings.

*Id.*

{¶ 17} Thus, the court concluded, the award issuing retroactive uniform allowance increases and retroactive wage increases for the Captains does not conflict with, and is rationally derived from, the terms of the 2016-2019 CBA.

{¶ 18} The court granted pre-judgment interest from the date of the award and post-judgment interest from the date of the court's judgment, pursuant to R.C. 1343.03(A).

{¶ 19} The city filed a timely notice of appeal and raises two assignments of error for our review:

I. The trial court erred when it rejected the City's argument that the parties' contract interpretation dispute should have been heard by the State Employment Relations Board and held it was within the Arbitrator's jurisdiction to hear the dispute.

II. The trial court erred when it confirmed the Arbitrator's award that resolved the parties' contract interpretation dispute on the effective dates of new compensation terms because it was outside the Arbitrator's authority to order retroactive payment.

## II. Law and Analysis

{¶ 20} Arbitration is a favored method of resolving disputes so the scope of judicial review of the arbitration proceedings is limited by statute and construing

case law. *Cleveland v. Cleveland Police Patrolmen's Assn.*, 8th Dist. Cuyahoga No. 98259, 2012-Ohio-5746, ¶ 18, citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998), and *Goodyear Tire & Rubber Co. v. Local Union No. 200, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 42 Ohio St.2d 516, 330 N.E.2d 703 (1975).

## A. Standard of Review

{¶ 21} When reviewing a decision of a common pleas court confirming, modifying, vacating, or correcting an arbitration award, we accept findings of fact that are not clearly erroneous as true but decide questions of law de novo. *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, 103 N.E.3d 804, syllabus. Whether an arbitrator has exceeded their authority pursuant to R.C. 2711.10(D) is a "'question of law'" that is reviewed de novo. *Id.* at ¶ 25, quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 974 (6th Cir.2000).

{¶ 22} Our de novo review on appeal, however, is *not* a de novo review of the merits of the dispute as presented to the arbitrator. *Zeck v. Smith Custom Homes & Design, LLC*, 8th Dist. Cuyahoga No. 110574, 2022-Ohio-622, ¶ 12, citing *Adams Cty./Ohio Valley Local School v. OAPSE/AFSCME, Local 572*, 2017-Ohio-6929, 94 N.E.3d 937 (4th Dist.). Rather, we review a trial court's decision whether to vacate an arbitration award "de novo to see whether any of the statutory grounds for vacating an award exist." *Id.*

**{¶ 23}** R.C. 2711.10(D) provides that a trial court should vacate an arbitration award if the arbitrator exceeded his or her power or so imperfectly executed his or her authority that a mutual, final, and definite award on the matter submitted was not made. When considering a collective bargaining agreement, a court reviewing an arbitration award under R.C. 2711.10(D) is limited to determining whether the award draws its essence from the agreement and whether the award is unlawful, arbitrary, or capricious. *Assn. of Cleveland Fire Fighters, IAFF Local 93 v. Cleveland,* 99 Ohio St.3d 476, 479, 793 N.E.2d 484 (2003). An arbitrator's award draws its essence from a CBA when there is a "rational nexus" between the agreement and the award. *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 84, 488 N.E.2d 872 (1986). A "rational nexus" between the agreement and the award exists where the arbitration award is "rationally supported" by the agreement or can be "rationally derived" from the agreement. *Piqua v. Fraternal Order of Police, OLC*, 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, ¶ 26 (2d Dist.). If the arbitration award draws its essence from the CBA and is not unlawful, arbitrary, or capricious, the reviewing court's inquiry ends, and the award must be upheld. *Mahoning Co.* at *id.*

**{¶ 24}** An error of fact or law by an arbitrator does not provide a basis for vacating an arbitration award under R.C. 2711.10. *N. Ohio Sewer Constrs., Inc. v. Bradley Dev. Co.*, 159 Ohio App.3d 794, 2005-Ohio-1014, 825 N.E.2d 650, ¶ 14 (8th Dist.). Moreover, this court has recognized that when contracting parties

agree to submit a prospective controversy to binding arbitration, they must accept the result, even if it is legally or factually wrong. *Cleveland v. Assn. of Cleveland Fire Fighters, Local 93*, 20 Ohio App.3d 249, 253, 485 N.E.2d 792 (8th Dist.1984); *see also Cleveland v. Fraternal Order of Police, Lodge No. 8*, 76 Ohio App.3d 755, 758, 603 N.E.2d 351 (8th Dist.1991) ("When parties agree to submit their dispute to binding arbitration, they agree to accept the result, regardless of its legal or factual accuracy.").

{¶ 25} Thus, our review of the arbitration award pursuant to R.C. 2711.10(D) is not a de novo review of the merits of the dispute, and we do not review the arbitration award for legal or factual errors.

**Jurisdiction over Claims**

{¶ 26} In the first assignment of error, the city argues that the trial court erred when it found that the arbitrator had jurisdiction over the dispute. The city claims that the dispute was within the exclusive jurisdiction of SERB.

{¶ 27} The Ohio Supreme Court has held that SERB "'has exclusive jurisdiction to decide matters committed to it pursuant to R.C. Chapter 4117.'" *N. Olmsted v. Internatl. Assn., Local 1267*, 8th Dist. Cuyahoga No. 91300, 2009-Ohio-960, ¶ 39, quoting *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge, No. 9*, 59 Ohio St.3d 167, 572 N.E.2d 87 (1991), paragraph one of the syllabus. SERB's exclusive jurisdiction, however, does not extend to "anything that 'arguably' constitutes an unfair labor practice." *Internatl. Assn., Local 1267* at *id.*, citing *E. Cleveland v. E. Cleveland Firefighters Local 500*,

*I.A.F.F.*, 70 Ohio St.3d 125, 127, 637 N.E.2d 878 (1994). "The General Assembly's vesting of SERB with exclusive jurisdiction to determine unfair labor practices defined in R.C. 4117.11 was never meant to foreclose parties to a collective bargaining agreement from settling differences in interpreting provisions of their agreement through the process of binding arbitration, especially given the clear language of R.C. 4117.10(A) * * *." *Internatl. Assn., Local 1267* at *id.*, citing *E. Cleveland Firefighters Local 500* at 128. "Thus, although R.C. Chapter 4117 provides SERB with exclusive jurisdiction over certain issues, R.C. 4117.10(A) permits the employer and employee, through the employee's exclusive representative, to commit to final and binding arbitration of grievances through a collective bargaining agreement." *Internatl. Assn., Local 1267* at *id.*

{¶ 28} Article XXV of the 2016-2019 CBA provided that any "dispute or difference * * * concerning the interpretation and/or application of any provision of this contract * * * be resolved by arbitration." Article XXV further required that any disputes concerning arbitrability of any grievance be resolved by an arbitrator. Because Article XXV of the parties' CBA granted exclusive authority to the arbitrator to decide whether the grievance was arbitrable, the question before this court is whether the arbitrator's determination on arbitrability was unlawful, arbitrary, or capricious.

{¶ 29} The arbitrator found that the parties agreed to arbitrate the issue of arbitrability and the merits since "in instances where either party contests arbitrability," the parties agreed that "the question of arbitrability will be placed in

front of an arbitrator and the same arbitrator will also hear the case on the merits." The trial court agreed and found that "in making the decision of whether the matter was arbitrable, * * * the Arbitrator logically, necessarily, and justifiably had to make a determination of whether there was a valid CBA" and the arbitrator's decisions on the interwoven issues of contract formation and arbitrability were lawfully evidenced by the record and conscionably supported by statute and by SERB's dismissal of the parties' ULP claims.

{¶ 30} Although each party had filed an ULP charge, those had been dismissed by SERB and SERB no longer had jurisdiction over the parties' claims. Therefore, the arbitrator's decision on arbitrability was not unlawful, arbitrary, or capricious and trial court did not err when it found that the arbitrator had jurisdiction over the union's grievance.

{¶ 31} The city's first assignment of error is overruled.

**Terms of the CBA**

{¶ 32} In the second assignment of error, the city argues that the arbitrator improperly added his own wage terms into the 2016-2019 CBA in a manner that conflicted with the CBA's express terms. The city also claims that the arbitrator exceeded his authority by ignoring the fact that the CBA was never finalized or binding and instead interpreted the fact-finder's report to create a CBA when one did not exist.

{¶ 33} The trial court found that the arbitrator was within his authority to reconcile the issue of the missing essential terms by logically applying principles of contract law and arbitral labor law:

> In light of the fact that the missing essential terms were with respect to the deemed agreed to fact-finding recommendations, the Court finds that the Arbitrator was justified under these circumstances in his interpretation of the Fact-Finder's recommendations and by his examination of the record which relevantly included the parties' lengthy bargaining history and key fact-finding proceedings.

Opinion and Order (Oct. 28, 2021), p. 5.

{¶ 34} The trial court reasoned:

> As evidenced by the Arbitrator's thorough reasoning and systematic methodology that resulted in a reasonable determination of the parties' ultimate intent, the Court finds that the Arbitration Award issuing retroactive Uniform Allowance increases and retroactive wage increases for the Defendant EMS Captains does not conflict with the express terms of 2016-2019 CBA and is rationally derived from the terms of the 2016-2019 CBA.

*Id.*

{¶ 35} We agree with the sound reasoning of the trial court. The arbitrator's conclusions that the 2016-2019 CBA entitled the Captains to pay increases effective April 1, 2017, and uniform allowance increases back to April 1, 2016, were based on the wage and uniform allowance terms of the fact-finding report and the parties' bargaining history and was guided by established principles of contract law and arbitral labor law. The arbitrator, in resolving the parties' disagreement on when the wage increases were effective under the fact-finding report concluded that "Specific Effective Dates" were omitted terms in the report. To address the omitted terms, the arbitrator correctly relied on the Restatement (Second) of Contracts and

arbitral law to guide his analysis. The arbitrator, to interpret the effective dates of the new wage schedule and uniform allowance increases, examined the fact-finder's recommendations and the record of the fact-finding to discern intent. The arbitrator interpreted the 2016-2019 CBA based on the fact-finder's recommendations and the record.

{¶ 36} Pursuant to R.C. 2711.10(D), so long as there is a rational nexus between the arbitrator's award and the 2016-2019 CBA, and the award is not arbitrary, capricious, or unlawful, the award must be upheld. *See Cleveland v. Fraternal Order of Police, Lodge 8*, 2017-Ohio-9174, 103 N.E.3d 235 (8th Dist.); *Cleveland v. Cleveland Police Patrolmen's Assn.*, 8th Dist. Cuyahoga No. 98259, 2012-Ohio-574. Based on our thorough review of the record in this case and upon examination of the CBA, we find that the arbitrator's decision is rationally based upon the terms of the collective bargaining agreement and not upon the arbitrator's own interpretations. Therefore, we find that the decision derives its essence from the collective bargaining agreement and the arbitrator did not exceed his powers, nor is the award arbitrary, capricious, or unlawful.

{¶ 37} The city's second assignment of error is overruled.

{¶ 38} Accordingly, judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

ANITA LASTER MAYS, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR